# Richmond

## WILLIAM P. HUDSON v. RICE M. YOUELL, SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.

November 24, 1941.

Record No. 2494.

Present, All the Justices.

The opinion states the case.

*W. A. Hall, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, Edwin H. Gibson, Assistant Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

William P. Hudson, a convict, instituted *habeas corpus* proceedings in the trial court against Rice M. Youell, superintendent of the State penitentiary. From the judgment dismissing the petition on demurrer, petitioner sought and obtained this writ of error.

On January 2, 1934, the grand jury of the Hustings Court of the city of Richmond returned five indictments against petitioner. One indictment charged that he attempted to murder one R. E. Munn on November 19, 1933. The other four indictments charged that petitioner burglarized the homes of J. E. Haws, F. E. Traylor, D. S. Ashton and Nellie Harris on different dates.

The following is certified to us to be the true record of the judgment pronounced against petitioner:

"In the Hustings Court of the City of Richmond,
"January 25, 1934.

"Commonwealth
v.
"William P. Hudson, Dft.

"INDICTMENT FOR ATTEMPT MURDER.

"Commonwealth
v.
"William P. Hudson, Dft.

"INDICTMENT FOR BURGLARY.

"Commonwealth
v.
"William P. Hudson, Dft.

"INDICTMENT FOR BURGLARY.

"Commonwealth
v.
"William P. Hudson, Dft.

"INDICTMENT FOR BURGLARY.

"Commonwealth
v.
"William P. Hudson, Dft.

"INDICTMENT FOR BURGLARY.

"The said defendant was this day led to the bar in the custody of the Sergeant of this city, and being arraigned upon each indictment, pleaded guilty of attempt murder as charged in the first case, and pleaded guilty of burglary in each of the other four cases against him.

And the court having heard the evidence in each case, doth ascertain the term of confinement of the said defendant in the penitentiary at one year in the first case and at five years in each of the other four cases, making twenty-one years in all.

"Whereupon it being demanded of the said William P. Hudson if anything for himself he had or knew to say why the court should not now proceed to pronounce judgment against him according to law, and nothing being offered or alleged in delay thereof, it is considered by the court that the said William P. Hudson be confined in the penitentiary for one term of one year and four terms of five years each, said terms to run consecutively, making a total of twenty-one years, these being the periods by the court ascertained. It is further ordered that the above terms are to run consecutively with any other terms to which the said defendant may heretofore have been sentenced in this or any other court in this Commonwealth. Said terms to be credited by time spent in jail awaiting trial. And it is ordered that the sergeant of this city do, when required so to do, deliver the said defendant from the jail of this city to the superintendent of the penitentiary, in said penitentiary to be confined and treated in the manner prescribed by law.

"And thereupon the said William P. Hudson is remanded to jail.

"A copy, Teste:

Walter Christian, Clerk."

Petitioner contends that this order is insufficient to hold him in custody for more than five years.

It seems evident that the trial judge contemplated imposing cumulative sentences totaling twenty-one years—one year on the indictment for attempted murder, referred to as the first case and named first in the caption—but there is nothing in the language of the order

or the title to indicate the order of sequence of the sentences on the four indictments charging · burglary. It may be inferred from the words, ''pleaded guilty of attempt murder as charged in the first case * * * , and the court * * * doth ascertain the term of confinement * * * at one year in the first case and at five years in each of the other four cases, * * * said terms to run consecutively,'' that the trial court intended· petitioner to serve the one year sentence for attempted murder first and the sentences for burglary thereafter. But in what order should petitioner begin his term of servitude for the four burglaries? The indictments contain no serial numbers or other identifying marks tending to show the order of presentation or the order of trial. The words in the caption—''Commonwealth v. William P. Hudson, Indictment for Burglary''—are as descriptive of one as of any of the other three indictments. No one can ascertain, from examination of the four indictments charging burglary and the record of conviction, the sequence in which the accused was ordered to serve the terms of imprisonment.

The order in *United States* v. *Patterson,* 29 F. 775, read: ''The court do order and adjudge that the prisoner, Oscar L. Baldwin, be confined at hard labor in the state's prison of the state of New Jersey, for the term of five (5) years upon each of the three indictments above named, said terms not to run concurrently, * * * .''

Judge Bradley, speaking for the court, said: ''If the prisoner is to be detained in prison for three successive terms, neither he, nor the keeper of the prison, nor any other person, knows, or can possibly know, under which indictment he has passed his first term, or under which indictment he will have to pass the second or the third. If, for any reason peculiar to either of said indictments, as, for example, some newly-discovered evidence, there should be a different face put upon the case, so as to induce the executive to grant the prisoner a pardon of the sentence on that indictment, no person could affirm which of the three terms of imprisonment was condoned.

"If a formal record of any one of the indictments, and the judgment rendered thereon, were, for any reason, required to be made out and exemplified, no clerk or person skilled in the law could extend the proper judgment upon such record. He could not tell whether it was the sentence for the first, the second, or the last term of imprisonment.

■ " * * * . The inherent vice of being insensible and incapable of application to the respective terms, without specifying the order of their succession, ** * * exist(s). The joint sentence is equivalent to three sentences, one on each indictment. One of these is applicable to the indictment for misapplication of funds; but, if they are successive, which one? That which is first to be executed, or that which is secondly or thirdly to be executed? No intelligence is sufficient to answer the question. A prisoner is entitled to know under what sentence he is imprisoned. The vague words in question furnish no means of knowing. They must be regarded as without effect, and as insufficient to alter the legal rule that each sentence is to commence at once, unless otherwise specially noted."

In *United States* v. *Daugherty,* 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, an accused was found guilty on three counts in one indictment and sentenced to a five-year term on each of the three counts. The order stated that the terms of imprisonment were to run consecutively and not concurrently. "Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded. Tested by this standard the judgment here questioned was sufficient to impose total imprisonment for fifteen years made up of three five-year terms, one under the first count, one under the second and one under the third, to be served consecutively and to follow each other in the same sequence as the counts appeared in the indictment. This is the reasonable and

natural implication from the whole entry. The words, 'said term of imprisonment to run consecutively and not concurrently,' are not consistent with a five-year sentence.''

Mr. Justice McReynolds distinguishes the *Daugherty Case* from the case of *United States* v. *Patterson* on the ground that the indictment in the former case contained three different counts charging separate offenses, while in the *Patterson Case* the three charges were made in three separate indictments. For that reason he stated, ''we think the reasoning of that opinion (*Patterson Case*) is not applicable to the present situation.''

In *Boyd* v. *Archer, Warden of U. S. Penitentiary*, 42 F. (2d) 43, 70 A. L. R. 1507, it appeared that the accused was convicted on February 27, 1928, and sentenced to be imprisoned for fifteen months at McNeil's Island. A second judgment was entered by the same court on March 15, 1929, sentencing the accused to fifteen months imprisonment at McNeil's Island, with this proviso: ''Said term of imprisonment is to run consecutively and not concurrently with and in addition to the sentence heretofore imposed in a former cause.'' This judgment was attacked on two grounds: First, because it did not direct the order in which the two sentences should be served; and second, because the words—''sentence heretofore imposed in a former cause''—were too indefinite and uncertain to identify the judgment and entry of the former cause. The court, after citing *United States* v. *Daugherty* and pointing to the fact that in the *Daugherty Case* the three offenses were charged in separate counts in one indictment, said: ''True, here the sentences are in two separate causes, whereas there they were on three counts of a single indictment. But logically that consideration cannot be controlling; the question in either case is of the intent of the court. There, it seems probable, the trial court intended that the sequence of the sentences should be in the order of the several counts upon which they were predicated, and here it would seem equally

if not more probable the court intended the sequence should follow the order in which the judgments were entered. When the court directed that the sentence which it was then imposing should run 'consecutively with' and should be 'in addition to' another pre-existing judgment, the language closely approximates an express direction that it was to follow and not precede such judgment."

■ It is elemental that a sentence must be certain, definite and consistent in all its terms, and not ambiguous, and not be open to any serious misapprehensions by those who must execute it.

■ In 15 Am. Jur. 123, it is said: "Where sentence is imposed on two or more counts of an indictment and the language of the sentences is too ambiguous to be otherwise construed, it will be construed as providing that the sentences shall run concurrently. If, in a single judgment entry, a defendant is given more than one sentence in the same penitentiary for different offenses, set out in separate indictments and tried together, and there is no direction as to the order of service, the sentences are to be regarded as running concurrently."

The Attorney General, in his brief, concedes the principle heretofore stated to be correct, but he contends that our construction of Code, sec. 4786, in *Wilborn* v. *Saunders,* 170 Va. 153, 195 S. E. 723, is to the contrary.

This statute, before the 1934 amendment, read: "When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement."

In the *Wilborn Case* the facts were that Wilborn, before sentence was pronounced, stood convicted on six indictments, three pending in the Circuit Court of Mecklenburg county and three pending in the Circuit Court of Brunswick county. On February 22, 1929, he was sentenced by the Circuit Court of Mecklenburg county to serve a term on each of the three indictments therein

pending. A separate judgment was entered on each indictment. The first order entered fixed the term of confinement in the penitentiary for a period of two years. It was not necessary for this order to state the time of the beginning of his confinement, because Code, sec. 5019, provides: "That the term of confinement in jail or in the penitentiary for the commission of a crime shall commence and be computed from the date of the final judgment which, in case of an appeal, shall be that of the refusal of a writ of error or the affirmance of the judgment, * * * ." The orders entered on the other two indictments specifically provided that the computation of time should begin after the expiration of the sentence theretofore imposed upon the accused.

Later, on March 11, 1929, Wilborn was sentenced to one year's confinement in the penitentiary on each of the indictments pending against him in the Circuit Court of Brunswick county. In each judgment it was ordered that the sentence therein imposed should not "become current" until the expiration of the sentence theretofore entered. It is true that the sentence imposed on the first indictment pending in the Circuit Court of Brunswick county did not state when the period of servitude should begin, but that part of the statute, providing that the "confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement," definitely postponed the beginning of this period of servitude until after the expiration of the terms of punishment previously entered by the Circuit Court of Mecklenburg county. This is the extent of the holding in the *Wilborn Case* on the question.

One of the questions certified by the District Court to the General Court in *Commonwealth* v. *Leath,* 1 Va. Cas. 151, was whether prisoners, who had been tried and convicted for separate and distinct felonies, were liable under the law to distinct punishments. The court, in determining the question, said: "The court having ma-

turely considered the transcript of the record in this case, is of opinion that the said Heartwell and Peter Leath may be adjudged to undergo a confinement in the jail and penitentiary house of this Commonwealth, upon the five convictions last in the record in the said case mentioned, although they have already been adjudged to undergo such imprisonment upon the first conviction therein mentioned, agreeably to the former opinion of this court pronounced at June term 1800, in the case of the Commonwealth against Taylor; and each imprisonment ought to commence from and after the expiration of the imprisonment or imprisonments which may have been adjudged against them before the rendition of such judgments respectively.''

The statute is but a declaration of this principle announced by the General Court. It was incorporated into the statute law by the Acts of 1877-8 (c. 10, sec. 28, p. 315) and remained unchanged until amended in 1934. See Acts of 1934, p. 175.

In the *Leath Case,* as in the pending case, the accused stood convicted of five separate and distinct felonies. The General Court specifically held that cumulative sentences could be imposed upon the accused and directed that the order of servitude should be stated in the separate judgments. In the pending case, a single judgment entry was made for the five convictions.

██ Construing the sentences in question in accord with the foregoing principles, it seems that petitioner would be compelled to serve, first, the one-year sentence for attempted murder, and then the sentences pronounced against him for the four burglaries. The judgment does not state the sequence of the terms of servitude. It contains no language from which such sequence may be inferred. The mandate of the statute, reading, ''The term of confinement * * * in the penitentiary for the commission of a crime shall commence and be computed from the date of the final judgment,'' controls. Hence the sentences necessarily run concurrently.

On March 8, 1934, subsequent to the five convictions on January 25, 1934, petitioner was indicted in the Circuit Court of the city of Richmond under Code, sec. 5054, as an "habitual offender" and sentenced to one year's confinement in the penitentiary, the order of conviction stating that "the one year additional confinement to begin at the end of his present term of confinement therein."

These cumulative sentences, with the order of sequence as stated, totaled seven years' confinement, less fifty-three days spent in jail awaiting trial. Computing this period of time from January 25, 1934, it appears that petitioner has served his total period of confinement and ordinarily would be entitled to his discharge. However, it appears that on May 21, 1921, petitioner was convicted of two other burglaries. The sentence in one case was confinement in the penitentiary for the period of twelve years, and in the second case the period of confinement was for the term of eighteen years. The second order stated that the sentences should run consecutively and not concurrently, the total period of confinement thus being thirty years.

On the 15th day of March, 1933, the Honorable John Garland Pollard, then Governor of Virginia, granted to the accused a pardon, providing that "if he (petitioner) should violate any of the conditions or if ever again he be found guilty of a violation of the penal laws of the Commonwealth, this pardon shall be null and void."

The convictions of the accused on January 25, 1934, were violations of the conditions of the pardon accepted by him. It appears that on the day the conditional pardon was accepted, six years, five months and nineteen days of his orignal sentences remained unserved.

Petitioner contends that the unserved part of the original sentences began to run concurrently with the sentences imposed on January 25, 1934. In support of this contention he relies upon the case of *Wright* v. *Youell*, 160 Va. 925, 168 S. E. 339. In that case it was distinctly said: "There has been no order of the Gov-

ernor declaring the conditions of the pardon violated; there have been no statutory or common law proceedings to ascertain whether the plaintiff has violated the conditions imposed upon and accepted by him. The Commonwealth contends none are necessary; that by the express terms of the pardon the moment he was convicted a second time that moment his pardon became null and void."

We held: "If, by the terms of the pardon, it became null and void upon the second conviction of the plaintiff, at the moment he was taken in custody (convicted) he began to serve his unexpired term, and in the absence of anything to the contrary in the order of his second conviction he began the service of that sentence also."

The order in the instant case clearly shows that it was the intention of the trial court to restrict the time of servitude imposed by that order to the five indictments then pending.

There is no statute in Virginia regulating the proceedings to be instituted to establish the breach of a condition in a pardon granted to a person serving time in jail or in the penitentiary. The pardon in this case contains no stipulation reserving to the Governor the power, after hearing, to declare a breach of the conditions imposed.

Under such circumstances, it seems that the established practice at common law and in most of the American States is for the trial court, upon the matter being brought to its attention, to issue a rule reciting the original judgment of conviction and sentence, the pardon and its conditions, and the alleged violation of or non-compliance with the conditions, and commanding the sheriff to arrest the convict and bring him before the court to show cause, if any he can, why the original sentence imposed upon him should not be executed. 20 R. C. L. 574.

The superintendent of the Virginia State penitentiary, in his demurrer and answer to the petition filed in the

lower court, among other things, said: "Respondent shows unto the court that the said petitioner, William P. Hudson, pursuant to the common law in effect in Virginia as to the recommitment of a person conditionally pardoned upon proof of a violation of the terms of the conditional pardon, should have a rule issued against him to show cause, if any he can, why he should not be recommitted to respondent's custody to serve the unexpired term for which he was conditionally pardoned by the Governor of Virginia on March 15, 1933."

This prayer should have been granted and the rule issued under the common law power of the trial court. This common law power may be invoked in the absence of a statute regulating the proceedings to revoke a pardon and where the Governor has not expressly reserved the right, in the pardon, to revoke it for cause.

If the superintendent of the penitentiary and the law enforcement officers of the Commonwealth follow this common law procedure, then full opportunity will be given the accused to offer any and all pertinent defenses to the accusations stated in the rule. If the breach of the conditions of the pardon be established, the court should, in its order, state the time of commencement of the unserved term or terms. Such procedure will clarify the uncertainty which now seems to exist when a person holding a conditional pardon has been convicted and sentenced to confinement for a crime committed subsequent to the date of the pardon.

For the reasons stated, the case is remanded to the lower court with directions that a rule be issued against petitioner in accordance with the prayer of respondent's answer, and that a hearing be granted and the issues determined on the rule.

*Remanded.*

GREGORY, J., dissenting.

I am unable to agree with the conclusion reached in the majority opinion—a result which is incompatible with my sense of justice.

Here we are dealing with an habitual criminal of the most vicious type; not even a scintilla of reasonable hope exists that he will reform and become a rehabilitated, law-abiding citizen. On the contrary, human experience and prudence compel us to admit that the safety of society will be better subserved if the petitioner remains in prison for his entire term of twenty-one years.

The defendant had been formerly sentenced to confinement in the penitentiary for a period of thirty years. After serving approximately four-fifths of this term, he was conditionally pardoned by the Governor, provided that he never again break the penal laws of the Commonwealth. Less than one year after obtaining his freedom, the petitioner perpetrated four acts of burglary and one of attempted murder. No question of his guilt exists, for he pleaded guilty to all five indictments. After hearing evidence in each particular case, the court sentenced him to serve one year for the attempted murder and five years each for the four acts of burglary, making a total of twenty-one years. No order of sequence was specified in the order of the court.

Because the prisoner is unable to ascertain at any particular moment under which indictment he is serving, he claims that the sentences must run concurrently, although the order specifically stated the sentences to be consecutive. Hence, he is now claiming he should be given his freedom after serving six years. The majority opinion sustains this contention.

The necessity of specifying the order of sequence of sentences was enunciated in *United States* v. *Patterson*, 29 F. 775. The inflexibility of this technical rule was subsequently mitigated in *United States* v. *Daugherty*, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, where the court

presumed the sentences to follow the order of the three counts under the indictment. See also 70 A. L. R. 1511. However, these decisions are not binding upon us. Settled principles of law in our own Commonwealth support a rejection of this technicality.

Section 4786, Virginia Code (Michie), now mandatorily provides that sentences shall not run concurrently unless so expressed in the order. Prior to the amendment of 1934 the express provision of the statute was that the sentences should run consecutively. The intent of the court, unequivocally expressed, was that the defendant serve twenty-one years. The contention of the defendant, if allowed, will violate not only section 4786 as it was prior to the amendment of 1934, but also the express order of the court. The only complaint voiced by the defendant is that no order of sequence was indicated by the court, but I cannot see how in this particular case the absence of an order of sequence prejudices the petitioner. There is no probability of his obtaining any more pardons; nor is there any reason to anticipate any newly-discovered evidence, for he was convicted on pleas of guilty, and not on a verdict based on conflicting evidence.

The effect of the court's judgment was to lump the sentences together to make a sentence of twenty-one years. In *Parsons* v. *Commonwealth*, 154 Va. 832, 152 S. E. 547, the lower court added the fines together, as it did the periods of confinement, when the jury had found the defendant guilty on two counts, sentencing the defendant to one term of nine months in jail. Under such a sentence there was no way of ascertaining any order of sequence of the two sentences. Mr. Justice Holt, in referring to this at p. 853, said: "He (defendant) did not suffer because the verdict was thus dealt with." In the instant case the defendant cannot show where he is, in fact, prejudiced by the order committing him. In fact, he could have been given the supreme penalty on any one of the indictments for burglary.

The petitioner could have requested that an order of sequence be given to his sentence when it was pronounced. If the court had refused to do so, he could have applied for a writ of error. He should not be allowed to acquiesce silently in the pronouncement of sentence, wait for six years and then free himself on the mere irregularity of the former proceeding by invoking an extremely technical rule. A writ of *habeas corpus* is never substituted for a writ of error.

Mere errors or irregularities in court proceedings are not grounds for relief by *habeas corpus*. *Connella* v. *Haskell,* 158 F. 285. See 25 Am. Jur. 184; 76 A. L. R. 468. Here the petitioner is detained, not by virtue of a void judgment, but by a valid judgment of a court of competent jurisdiction.

If it was error to fail to state the order of sequence in the judgment, petitioner's only remedy was by writ of error. But I do not concede that it was error to fail to provide for an order of sequence in the judgment in order for the sentences to run consecutively. No order of sequence is, or was prior to 1934, required by the statute, and under the holding in *Parsons* v. *Commonwealth, supra,* the periods of confinement may be lumped or aggregated.

CAMPBELL, C. J., and EGGLESTON, J., concur in this dissent.