## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### WILLIAM P. HUDSON v. RICE M. YOUELL, SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.*

April 13, 1942.

Record No. 2494.

Present, All the Justices.

*This opinion was delivered upon a rehearing. The original opinion will be found in 178 Va. 525.—Reporter's Note.

The opinion states the case.

*W. A. Hall, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney-General, Joseph L. Kelly, Jr., Assistant Attorney-General, Edwin H. Gibson, Assistant Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This case was argued and submitted to this court at the October, 1941, session in Richmond, and the opinion of the majority, prepared and handed down by Mr. Justice Hudgins at the November, 1941, session of the court. (See 178 Va. 525, 17 S. E. (2d) 403). Thereafter, the Commonwealth

filed its petition for a rehearing, and after mature consideration the prayer of the petition was granted, and the case was reheard at the February, 1942, session of the court in Richmond.

The record and petition bring under review the judgment of the trial court upon a writ of *habeas corpus,* denying petitioner a discharge from custody.

On January 25, 1934, William P. Hudson, petitioner, was led before the bar of the Hustings Court of the City of Richmond and arraigned upon five separate indictments—one for "attempt" murder and four for burglarizing four separate dwellings. The sentence of the court was in the following language:

"The said defendant was this day led to the bar in the custody of the Sergeant of this City, and being arraigned upon each indictment, pleaded guilty of attempt murder as charged in the first case, and pleaded guilty of burglary in each of the other four cases against him. And the Court having heard the evidence in each case, doth ascertain the term of confinement of the said defendant in the Penitentiary at one year in the first case and at five years in each of the other four cases, making twenty-one years in all.

"Whereupon it being demanded of the said William P. Hudson if anything for himself he had or knew to say why the Court should not now proceed to pronounce judgment against him according to law, and nothing being offered or alleged in delay thereof, it is considered by the Court that the said William P. Hudson be confined in the Penitentiary for one term of one year and four terms of five years each, said terms to run consecutively, making a total of twenty-one years, these being the periods by the court ascertained. It is further ordered that the above terms are to run consecutively with any other terms to which the said defendant may heretofore have been sentenced in this or any other Court in this Commonwealth. Said terms to be credited by time spent in jail awaiting trial. And it is ordered that the Sergeant of this City do, when required so to do, deliver the said defendant from the jail of this City to the Superintendent of the Peni-

tentiary, in said Penitentiary to be confined and treated in the manner prescribed by law.

"And thereupon the said William P. Hudson is remanded to jail."

No objection was made by Hudson at this time or at any other time to the sentence or the order carrying it into effect. No motion was made to have the sentence state the order of sequence of the terms of confinement.

On the 10th day of April, 1941, more than seven years later, William P. Hudson filed a petition for a writ of *habeas corpus* in the Hustings court of the city of Richmond, alleging that he was then being illegally detained; that the order of the court sentencing him to consecutive terms in the penitentiary was too vague for application since no order of sequence was therein set out, and that accordingly the five terms of sentence began running simultaneously. Five years being the longest single term of confinement specified in the sentence, that period was all he claimed to be obligated to serve. Since he had already served five years in the penitentiary, it was his contention that he was being illegally held. The trial court dismissed this writ and remanded petitioner to the penitentiary. From this judgment the petitioner has obtained a writ of error.

The petitioner grounds his contention upon the authority of *United States* v. *Patterson*, 29 F. 775. In that case the petitioner had entered pleas of guilty to three indictments and had been sentenced as follows: "The court do order and adjudge that the prisoner, Oscar L. Baldwin, be confined at hard labor in the state's prison of the state of New Jersey, for the terms of five (5) years. upon each of the three indictments above named, said terms not to run concurrently * * *." Mr. Justice Bradley, who wrote the opinion, said there was no way to arrive at any order of succession of the terms of imprisonment imposed. No order of sequence being designated, the prisoner could not know at any particular time under what sentence he was serving. Hence, it was held that the sentences were incapable of being applied consecutively, and therefore must be considered as running concurrently. The judgment for the term beyond the five years

was treated as void, and petitioner was granted the writ of *habeas corpus*. William P. Hudson relies strongly upon the reasoning in the opinion of that case as ground for the granting of his own freedom. He attempts, however, to stretch the authority of that opinion beyond its true significance by saying that a federal question is herein involved. With that contention we do not agree. No reference whatever was made in the cited opinion to constitutional guaranties of due process. Mr. Justice Bradley pointed out that the vague words involved in the sentence were insufficient to alter the legal rule that each sentence is to commence at once, unless otherwise specifically ordered. The actual decision in the *Patterson case* was simply that the trial court had not effectively provided for the accumulation of multiple sentences as required by the prevailing federal practice.

The question presented to us for determination is whether under the laws of Virginia the judgment imposing a sentence of twenty-one years was a valid one.

The authority of the highly technical rule enunciated in *United States* v. *Patterson, supra,* has been subsequently undermined in the federal courts themselves.

In *United States* v. *Daugherty*, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, the accused was sentenced, on a plea of guilty to three counts under an indictment, to a term of five years on each of the counts, the term of imprisonment to run consecutively and not concurrently. It was urged by the defendant that the sentence was only for five years, on the theory that sentences so imposed run concurrently in the absence of a specific and definite provision therein that they be made to run consecutively by specifying the order of sequence. Mr. Justice McReynolds, however, rejected this argument, and distinguished the case of *United States* v. *Patterson, supra,* which grew out of a sentence under pleas of guilty to three separate indictments, and the case at bar which concerned counts in one indictment. In determining that the sentence imposed a fifteen year period of imprisonment the court said this, at p. 363:

"Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious mis-

apprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded. Tested by this standard the judgment here questioned was sufficient to impose total imprisonment for fifteen years * * *". The court then stated that the three terms followed each other in the same sequence as the counts appeared in the indictment. This inferred sequence, quite artificial and accidental, gave the court sufficient excuse to reject the full import of the rule laid down in *United States* v. *Patterson, supra.*

In *Boyd* v. *Archer*, 42 F. (2d) 43, 70 A. L. R. 1507, the petitioner was sentenced in two separate cases, the second sentence providing that it was to run consecutively with and in addition to the sentence which had been theretofore imposed in a former case. Although these two sentences were imposed on two indictments in the same court, it was held that the sentences were to run consecutively, the court explaining that the sequence should follow the order in which the judgments were entered. The fact that the sentences were in two separate causes and not on separate counts of the same indictment was held in the instant case not to be controlling, and *United States* v. *Daugherty, supra,* was held to govern, as against the contention that the judgment did not direct the order in which the two sentences should be served, but merely provided that they run consecutively.

Thus the strict necessity for specifying a sequence to sentences in the federal courts was relaxed, first by distinguishing counts under one indictment from several indictments, and then subsequently obliterating this distinction, the court still paying lip service to the requirement for sequence by inferring such sequence from any accidental or artificial means available.

Not only has this highly technical rule been nicely distinguished, but its basic principles have been repudiated by the adoption by the federal courts of the principle of lumping sentences.

In *Myers* v. *Morgan*, 224 F. 413, petitioner had been found guilty in the district court by a jury on both counts of an indictment for violation of the Mann Act. The sentence of the court in that case was:

"That for his offense the said defendant be imprisoned in the penitentiary * * * for the period of ten years * * *". The maximum punishment provided in the act for one offense was five years confinement. The Circuit Court of Appeals, (8th circuit), in refusing to grant the petition for *habeas corpus* said at p. 415:

"That the court may impose one sentence on a conviction for two or more offenses, provided the sentence is not in excess of the maximum allowed by law for all the offenses of which the defendant has been found guilty, has been determined in *Re Henry*, 123 U. S. 372, 8 Sup. Ct. 142, 31 L. Ed. 174, *In re De Bara*, 179 U. S. 316, 321, 21 Sup. Ct. 110, 45 L. Ed. 207, *Hyde* v. *United States*, 198 Fed. 610, 119 C. C. A. 493, decided by this court, and *Howard* v. *Moyer* (D. C.) 206 Fed. 555."

And in *Brinkman* v. *Morgan*, 253 F. 553, petitioner was indicted in eight counts, pleaded guilty and was sentenced to imprisonment for ten years. Under each count he would have been sentenced to five years imprisonment. The court denied the discharge of the petitioner, saying that there was no sound legal objection to a single sentence for several offenses charged in one indictment, if it did not exceed the statutory maximum for all. To the same effect, see *Neely* v. *United States*, 2 F. (2d) 849.

Clearly, where several sentences are lumped into one single term, there is no attempt to specify any sequence, and it would be unreasonable to infer that a court had thereby even considered doing so.

For the single reason that the federal rule enunciated by the court fifty-four years ago in *United States* v. *Patterson*, *supra*, has since lost favor within its own jurisdictional orbit, we should be very reluctant now to adopt it in our Commonwealth. Moreover, established principles of law and judicial practice in Virginia support a rejection of this technicality.

Code, section 4786 (Michie), as it was in January, 1934, when the petitioner was sentenced, read as follows:

"When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subse-

quent conviction, shall commence at the termination of the previous term or terms of confinement."

■ Thus it is clear that this section, directly controlling upon the petitioner when he was sentenced in 1934, would have been self-executing in imposing consecutive terms of punishment upon him, even had the court failed to declare the terms of imprisonment consecutive.

■ Code, section 5019 (Michie), stating that confinement shall commence from the date of the final judgment, must be read in conjunction with section 4786, and being general in its terms must give way to section 4786 whenever they conflict, the latter being specific in its terms.

The intent of the court was, however, unequivocally expressed that the terms should run consecutively. This, even in the absence of a pertinent statutory provision, should have been sufficiently clear and certain for execution.

■ In *Wilborn* v. *Saunders*, 170 Va. 153, 195 S. E. 723, Mr. Justice Hudgins quoted the following approvingly at p. 160:

" 'The law does not contemplate that the court in fixing the punishment shall also fix the beginning and ending of the period during which the imprisonment shall be suffered. The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, is not a part of the sentence at all. The essential portion of the sentence is the punishment, including the kind of punishment and the amount thereof, without reference to the time when it shall be inflicted. The sentence, with reference to the kind of punishment and the amount thereof, would, as a rule, be strictly executed. But the order of the court with reference to the time when the sentence shall be executed is not so material. Expiration of time without imprisonment is in no sense an execution of the sentence.' *State* v. *Horne, supra*."

The effect of the court's judgment in the case at bar was to lump the sentences together to make a sentence of twenty-one years. In *Parsons* v. *Commonwealth*, 154 Va. 832, 152 S. E. 547, the lower court added the fines together, as it did the periods of confinement, when the jury had found the

defendant guilty on two counts, sentencing the defendant to one term of nine months in jail. Under such a sentence there was no attempt to indicate any order of sequence of the two sentences. Mr. Justice Holt, in referring to this at p. 853 said: "He (defendant) did not suffer because the verdict was thus dealt with." In the instant case, the defendant cannot show where he is, in fact, prejudiced by the order committing him. In fact, he could have been given the supreme penalty on any one of the indictments for burglary.

The general rule in Virginia, both before we had a statute on the subject and since, is that sentences run consecutively and not concurrently. The first statute appears in the Acts of 1877-78, p. 315. In fact it is not disclosed from the statute prior to 1934 that a court had *statutory* power to order the sentences to run concurrently. This statutory power to make sentences run concurrently appeared in the statute for the first time in the amendment of 1934 (Acts 1934, p. 175). See *Commonwealth* v. *Leath*, 1 Va. Cas. (3 Va.) 151, where the rule was applied before any statute had been enacted on the subject, and *Parsons* v. *Commonwealth*, 154 Va. 832, 152 S. E. 547, where the rule was applied after the statute had been enacted. Under the amendment of 1934 the court is given express power to order sentences to run concurrently, but in the absence of express direction, they still run consecutively. See Code, section 4786 (Michie 1936).

In *Commonwealth* v. *Leath*, *supra*, the prisoners were indicted and convicted of several felonies. The jury ascertained their term of imprisonment in each case. When they were brought to the bar of the court to receive their sentence, they moved in arrest of judgment, "because the defendants * * * have already been found guilty of stabbing, and have been sentenced * * * in the penitentiary house, and because no law of the land allows a man convicted, to be sentenced to undergo punishment at a far distant day, after he shall have undergone punishment in the meantime, for an offense of the like, or of a different kind." When this motion was made the district court being doubtful of its action "adjourned the question to the general court for their decision."

The general court held that the defendants "may be adjudged to undergo a confinement in the jail * * * upon the five convictions * * * although they have already been adjudged to undergo such imprisonment upon the first conviction * * * and each imprisonment ought to commence from and after the expiration of the imprisonment * * * which may have been adjudged against them before the rendition of such judgments respectively."

The clear effect of that case is that an accused who has been convicted of several felonies may be adjudged to undergo several imprisonments therefor, to commence respectively, from and after the expiration of prior imprisonments adjudged against him. In other words, the sentences of imprisonment must run consecutively and not concurrently.

It is quite interesting to note that in the *Leath case* the defendants did not wait many years before raising the point but did so before sentence was passed upon them.

Code, section 4786, neither prior to the amendment of 1934 nor since, does not require the court to state sequence in its orders sentencing a defendant to imprisonment upon two or more convictions. The statute is silent on this subject. On the other hand, the legislative intent seems manifest that the statute was intended to be self-executing. But even if the convict must know what sentence he is serving at any particular time, then the clerk of the penitentiary, who under Code, section 4997, is charged with the duty of keeping a register showing the term of confinement and the offense of each convict, could, in the performance of his ministerial duties, inform the convict of his term of confinement and of the offense for which he may be serving his imprisonment.

In the case at bar the express intent of the court in its sentence was the petitioner should undergo twenty-one years of servitude on the five indictments and that the sentences should run consecutively and not concurrently. If the petitioner deemed an order of sequence necessary he should have requested it at the time of his trial and sentence as was done in *Commonwealth* v. *Leath, supra.* If this request had been refused, a writ of error to this court would

have been in order. The petitioner will not be allowed to acquiesce in the error of the court, if it were error, for seven years and then free himself from the balance of his sentence on a mere irregularity by invoking such a technical and unwarranted rule which has never prevailed in Virginia. A writ of *habeas corpus* is never substituted for a writ of error. *Connella* v. *Haskell,* 158 F. 285; 25 Am. Jur. *Habeas Corpus* 184; 76 A. L. R. 468. See also 28 Va. Law Rev. 568.

To adopt the contention of petitioner would in effect ignore not only the mandate of our legislature but also that of the court which pronounced sentence in a case over which it had jurisdiction. It would loose upon society a hardened criminal of the most vicious type. The petitioner had previously been sentenced to thirty years in the penitentiary. After serving approximately four-fifths of this term he was conditionally pardoned by the governor in 1933. Less than a year after his release he perpetrated four distinct acts of burglary and one of attempted murder. Not only would the petitioner be released, but the floodgates of the penitentiary would be opened for the worst kind of criminals—those sentenced for several crimes. The Superintendent of the State penitentiary made an affidavit to the effect that during the year of 1941, judgments certified with respect to forty-seven prisoners afforded no indication whatever as to sequence, and no guide of any description by which such sequence could be assigned. This affidavit has the effect of demonstrating not only the well established judicial practice in Virginia of not specifying any order of sequence, but also how shocking would be the result of following petitioner's contention whereby large numbers of the most vicious criminals would be given their freedom after serving only a fraction of their sentences which had been solemnly adjudged by courts of justice.

As a practical matter, petitioner is not prejudiced by the sentence complained of. It makes no practical difference in what order he is serving his several terms. He stands little chance of obtaining further executive clemency, since he has breached so flagrantly his prior conditional pardon; there

is no possibility that any after-discovered evidence may be produced, since he was sentenced on pleas of guilty. However, if the improbable were to occur, and for some reason petitioner's term were to be shortened, this could readily be done simply by deducting from the term of twenty-one years the period of time the governor might chance to give him by way of a pardon.

The record of petitioner itself negatives the contention that the alleged indefinite sentence thwarts his chances to secure a governor's pardon because the governor would desire to know for what terms he was being pardoned. His prior pardon was merely for approximately the last six years of a thirty year sentence made up of two terms which were cumulative. No attempt was made to specify for which term the pardon operated. (Indeed, it appears that this prior sentence for which he was pardoned failed to indicate any order of sequence.) The pardon was simply operative on the total thirty year term.

We find, accordingly, that the sentence complained of was a valid one for twenty-one years. The judgment of the lower court in dismissing the petition for a writ of *habeas corpus* is affirmed.

*Affirmed.*

SPRATLEY, J., concurring.

In concurring in the result reached by the majority of the court upon the rehearing and further development of this case, I have this to say:

The rule of decision advocated by Mr. Justice Hudgins seems to me to be supported by the authorities as a general principle. However, while technically correct, it is not infallible. Its adoption was intended to prevent injustice to a convict and not to injure the cause of justice or the enforcement of law and order. So long as its purpose is observed, it is to be applied. When its purpose fails there is no reason for its application.

The answer to the problem presented in this case is to be

found in the realities of the record, not in theory. We ought not to sacrifice justice by too strict an adherence to technicality.

The convict shows no injustice or injury to himself by reason of the sentences and judgments complained of. The reason for the rule having failed, its application is not justified. Without the sacrifice of any sound principle, justice, as the primary and moving consideration in this case, demands that the petition for a writ of *habeas corpus* be dismissed.

HUDGINS, J., dissenting.

My views of the principles applicable to this case are set forth at some length in the majority opinion announced on November 24, 1941, and reported in 178 Va. 525, 17 S. E. (2d) 403.

As I understand the record, the question is not "whether under the laws of Virginia the judgment imposing a sentence of twenty-one years was a valid one," as stated in the now majority opinion, but whether one judgment entry imposing five separate and distinct terms of imprisonment without indicating the order of succession is sufficient to deprive the prisoner of his liberty after he has served the longest of the five terms.

To the five indictments charging the commission of five separate and distinct felonies, the prisoner filed five separate pleas. There were five separate and distinct trials, five separate and distinct convictions, and five separate and distinct terms of imprisonment imposed. This appears from the judgment itself and the notations on the back of each indictment.

The judgment states: "The said defendant * * * being arraigned upon each indictment, pleaded guilty of attempt murder as charged in the first case, and pleaded guilty of burglary in each of the other four cases against him. And the court having heard the *evidence in each case,* doth ascertain the term of confinement of the said defendant in the penitentiary at one year in the first case and at five years in each of the other four cases." (Italics supplied.) That part

of the judgment entry imposing the sentences of conviction reads: "It is considered by the court that the said William P. Hudson be confined in the penitentiary for one term of one year and four terms of five years each, said terms to run consecutively * * *, these being the *periods* by the court ascertained."

On the back of four of the indictments the notations read:

"State of Virginia,
"City of Richmond, to-wit:

"At a Hustings Court held for the said city, at the courthouse, on 25th day of January, 1934, William P. Hudson was this day convicted of burglary. Whereupon, it being demanded of the said prisoner if anything for himself he had or knew to say why the court should not now proceed to pronounce judgment against him according to law, and nothing being offered or alleged in delay thereof, it is considered by the court that the said prisoner be confined in the penitentiary for the term of five years the period by the judge ascertained, said term to run consecutively with any other term or terms to which the said prisoner has been sentenced by this court, making a total of 21 years.

"Said term to be credited by the time spent in jail awaiting trial, or pending an appeal—to-wit: ————— days.

"A transcript from the record.
　　　"Teste:
　　　　　　"WALTER CHRISTIAN, Clerk."

The only change in the notation on the back of the fifth indictment is that in the ninth line the words "one year" are used in place of the words "five years."

The court did not impose a single sentence of twenty-one years. There were five sentences recorded in one judgment entry. The sum of the terms of confinement is twenty-one years. This is true, whether or not it was so stated in the judgment entry.

The same question would be presented if the accused had pleaded not guilty to each indictment, had been tried by five

different juries, had been found guilty, the juries had fixed his punishment at five years' confinement on four indictments and one year's confinement on one indictment, and the trial court had made one judgment entry imposing the five sentences without stating the order of succession or sequence in which the five terms of conviction should be served.

The statements in the majority opinion, that the provisions of section 4786, prior to the 1934 amendment, were self-executing, and that the general rule in Virginia, "both before we had a statute on the subject and since," is that sentences run consecutively and not concurrently, are contrary to my understanding of the Virginia decisions, the statutes and the general rule in force in other jurisdictions.

The original question which seemed to have troubled the profession and the common law judges was whether or not the court had the power to impose a sentence to begin in the future. This question was settled as early as 1716. "A judgment of imprisonment against a defendant, to commence from and after the determination of an imprisonment to which he was before sentenced for another offence, is good in law." *Wilkes's Case*, 19 Howell St. Tr. 1075, 1136.

"With regard to the error assigned in the judgment, that the imprisonment was to commence at a future day, it was apprehended that the judgment was given in that manner with the strictest propriety. The court meant that Mr. Wilkes should undergo twelve months' imprisonment for this offense, which could not be inflicted in any other manner. It would have been absurd to have made the imprisonment to commence immediately, Mr. Wilkes being already under sentence of imprisonment for ten months; and, in that case, would in effect have only suffered an imprisonment of two months; when the court, on account of the enormity of the offense, intended he should be imprisoned twelve months; and as that space of time was to be the measure of his imprisonment for this offense, it could not effectually have been inflicted in any other manner, unless the court had sentenced him to be imprisoned twenty-two months, to commence immediately; and then there would have remained twelve months after the end of the ten

months' imprisonment, which he had before been sentenced to. But that might be attended with hardship and injustice to Mr. Wilkes, by being imprisoned a longer time than the court meant, for the present offense; for if by the grace of the Crown, or by any means, the ten months' imprisonment should be pardoned, avoided or shortened, Mr. Wilkes under a sentence of twenty-two months' imprisonment, would be confined from the moment the former imprisonment should expire, until the end of the twenty-two months; which would exceed twelve months' imprisonment, when the court intended to inflict an imprisonment of twelve months only. Under the circumstances of this case, there was no incongruity in the imprisonment commencing at a future time; and if there was any novelty in it, it was to be attributed to the accumulated guilt of its object." *John Wilkes* v. *The King,* 4 Brown's Cases in Parliament (1803), 1. c. 366.

These common law principles as to misdemeanors were made applicable to felonies by the English Stat. 7 & 8, Geo. 4, c. 26, sec. 10, and by statute became the law of this Commonwealth. These principles were recognized and applied in the *Leath Case,* 1 Va. Cas. (3 Va.) 151, in 1806, as the General Court there said: "Each. imprisonment ought to commence from and after the expiration of the imprisonment or imprisonments which may have been adjudged against them (the accuseds) before the rendition of such judgments respectively."

Code, sec. 4786, is but a statutory declaration of the principles announced by the General Court. It is found in the Acts of 1877-8, c. 10, sec. 28, p. 315.

There is no conflict in the provisions of Code, sections 4786, 4930 and 5019. Sec. 4930 provides: "In any other criminal case, wherein judgment is given by any court, * * * , the court giving such judgment may postpone the execution thereof for such time and on such terms as it deems proper." There is nothing new in this provision. It is found in sec. 4051 of the Code of 1887; and in sec. 2, c. 209, of the Code of 1849.

Section 5019 of the Code of 1919 provides: "The term of confinement in jail or in the penitentiary for the commission

of a crime shall commence and be computed from the date of the judgment, unless such judgment is suspended at the instance of the defendant." This section has been somewhat modified by amendments in 1920, 1924 and 1928.

When the three sections are construed together and it appears that the court has exercised its power, either at common law or under the statute, the action of the court takes precedence over the directory provisions of the statutes.

Vermont has a statute, section 2362, which is virtually identical with section 4786. The Vermont court, in *In re Sargood*, 86 Vt. 130, 135, 83 A. 718, held: "It is very clear, and we hold, that the statute, upon which the relator relies, gives the court no additional power, and that it is but declaratory of the common law of the State; which declaration, the legislature very likely, in the language of Blackstone (1 Bl. Com. 86), 'thought proper, *in perpetuum rei testimonium,* and for avoiding all doubts and difficulties.' "

But even if, as declared in the majority opinion, section 4786 is self-executing, how can it be determined under this judgment entry which of the indictments for burglary takes precedence over the others? We have a statute, in the absence of a court order, directing when a term of confinement in the penitentiary shall begin. If a court enters an order stating when the term of confinement begins, it begins from that date. The beginning of the punishment, in either event, is clear, definite and certain. In this judgment entry, the beginning of no term of confinement of the sentences imposed for the commission of four burglaries can be ascertained unless the provisions of section 5019 control.

The general rule is: "Where a defendant is sentenced on two or more indictments on which he has been found guilty, sentence may be given against him on each successive conviction; in the case of sentences of imprisonment each successive term to commence from the expiration of the term next preceding. In some jurisdictions this rule has the support or statutory authorization. It cannot be urged against a sentence of this kind that it is void for uncertainty; it is as certain as the nature of the matter will admit. But the sentence must state that the latter term is to begin at the expiration of the

former one, otherwise it will run concurrently with it. A sentence to a term of years 'to commence after the expiration of former sentence,' or 'to commence at the expiration of the sentence aforesaid,' but containing nothing which shows to what the terms 'former sentence' or 'sentence aforesaid' relate, has been held to be void for uncertainty." 25 Am. & Eng. Encyc. of Law, 2d ed., 307.

"All the authorities agree, however, that, in the absence of any statute, if it is not stated in either of two sentences imposed at the same time that one of them shall take effect at the expiration of the other, the two periods of time named will run concurrently, and the two punishments be executed simultaneously. Such Mr. Bishop declares to be the rule of the common law * * *." *In re Breton*, 93 Me. 39, 42, 44 A. 125, 126, 74 Am. St. Rep. 335.

"If the imprisonment under one sentence is to commence on the expiration of the other, the sentence must so state or the two periods of time will run concurrently. *Re Jackson*, 3 MacArth. 24; *Fortson* v. *Elbert County*, 117 Ga. 149, 43 S. E. 492; *Re Breton*, 93 Me. 39, 74 Am. St. Rep. 335, 44 Atl. 125; *Ex parte Gafford*, 25 Nev. 101, 83 Am. St. Rep. 568, 57 Pac. 484; *Ex parte Hunt*, 28 Tex. App. 361, 13 S. W. 145." *Harris* v. *Lang*, 27 App. D. C. 84, 7 L. R. A. (N. S.) 124.

It is familiar practice that wherever the court imposing several sentences desires to have one begin on the expiration of another, that fact is expressly stated in the sentence; and whenever the court inadvertently fails to have the sentence recorded in that form, or from leniency intentionally omits to add such a provision, and the convict is committed in pursuance of such sentences, he is either voluntarily released by the jailer, or discharged on habeas corpus at the expiration of the longest term named in either of the sentences." *In re Breton, supra.*

"It seems to be well settled by many decisions and with entire uniformity that, where a defendant is sentenced to imprisonment on two or more indictments on which he has been found guilty, sentence may be given against him on each successive conviction; in the case of the sentence of imprisonment each successive term to commence from the expiration

of the term next preceding. * * * . It is absolutely essential that the last sentence shall state that the term of imprisonment is to begin at expiration of former sentence in order to prevent the prisoner from serving the two sentences concurrently with each other." *In re Black,* 162 N. C. 457, 78 S. E. 273.

"The rule of law is well settled that two or more sentences of a defendant to the same place of confinement run concurrently in the absence of specific provisions in the judgment to the contrary, * * * ." *People* v. *Graydon,* 329 Ill. 398, 401, 160 N. E. 748. See, also, 8 R. C. L. 240.

In *Wright* v. *Youell,* 160 Va. 925, 927, 168 S. E. 339, this court applied the general rule in the following language: "If, by the terms of the pardon, it became null and void upon the second conviction of the plaintiff, at the moment he was taken in custody he began to serve his unexpired term, and in the absence of anything to the contrary in the order of his second conviction he began the service of that sentence also. This rule cannot be changed except by the entry of the proper order by an officer clothed with due authority."

The statute was then in force, but it was not contended by the Attorney General, either in his argument or in his brief, that it reversed the general rule in force in other jurisdictions.

The quotation in the majority opinion from *Wilborn* v. *Saunders,* 170 Va. 153, 195 S. E. 723, is not relevant to any issue in this case. Wilborn contended that he could not be compelled to serve the unserved part of his original sentence for a breach of condition of his pardon when the breach was made after the expiration of his original sentence. The quotation simply means that the time of the actual service is not the dominant factor of the punishment. The beginning of service of the sentence may be postponed by the court, or the service may be interrupted by a stay, parole or pardon from the proper authorities. In either event, if there is a breach of the condition upon which the prisoner is released, he is still amenable to the service of the unserved portion of his original sentence, hence the quotation concludes: "Expiration of time without imprisonment is in no sense an execution of the sentence."

The quoted language, relied upon in the majority opinion, was taken from the Florida court in *State* v. *Horne*, 52 Fla. 125, 42 So. 388, 391, 7 L. R. A. (N. S.) 719. No reference was made to this language in a subsequent case by the Florida court, *Lake* v. *McClelland*, 101 Fla. 536, 134 So. 522, in which it was held: "When the court is confronted with the duty of passing sentence upon one who stands before the court convicted of two or more offenses, it becomes needful for the court to determine and adjudicate whether the sentences to be imposed for the several offenses are to run concurrently or separately, that is concurrently or consecutively, and, if consecutively, the time of the beginning of the running of each sentence must be definitely fixed so that it may be ascertained from the judgment itself or from the record in that particular case when that sentence is to begin to run."

"In such a case the judgment must specifically indicate the prior judgment under which the defendant is to be held, so that the jailer will know for what term he is to hold the prisoner, and the prisoner may be able to take proper steps to protect himself, if he is held unjustly." *Hatzell* v. *Dover*, 208 Ky. 149, 270 S. W. 723, 724.

It is significant to note that in the *Wilborn case, supra,* this is said: "In *Wright* v. *Youell*, 160 Va. 925, 168 S. E. 339, we held that in the absence of statute, and where the order of the court did not state whether two separate and distinct terms of confinement should run consecutively or concurrently, they ran concurrently."

Among the authorities relied upon in the majority opinion are *In re Henry*, 123 U. S. 372, 8 S. Ct. 142, 31 L. Ed. 174, and *In re De Bara*, 179 U. S. 316, 21 S. Ct. 110, 45 L. Ed. 207. The opinion in the *Henry case*, written by Mr. Chief Justice Waite, held that a single sentence imposed upon a person for three violations of U. S. Rev. St., section 5480 was valid. This conclusion was in accord with the section which created the offense. The pertinent provision read: "The indictment, information, or complaint may severally charge offences to the number of three when committed within the same six calendar months; but the court thereupon *shall* give a single sentence, and shall proportion the punishment especially to the degree in which

the abuse of the Post-Office Establishment enters as an instrument into such fraudulent scheme and device."

The statute creating the offense required the court, when the facts appeared, to enter a single judgment on three convictions, but in construing that statute, the court said: "Under the present statute three separate offences, committed in the same six months, may be joined, but not more, and when joined there is to be a single sentence for all. That is the whole scope and meaning of the provision, and there is nothing whatever in it to indicate an intention to make a single continuous offence, and punishable only as such, out of what, without it, would have been several distinct offences, each complete in itself."

The same statute was involved in the *De Bara case*. It was held that the trial court "had the power * * * to give a single sentence for several offences in excess of that which is prescribed for one offence." The statute expressly so declared. The opinion expressly approved the holding in the *Henry case*.

In the *Parsons case*, 154 Va. 832, 152 S. E. 547, the jury returned a verdict finding the accused guilty upon both the first and second counts of the indictment and fixed his punishment upon the first count at three months in the county jail and assessed him a fine of $250, and upon the second count fixed his punishment at six months in the county jail and assessed him a fine of $250. Upon this verdict the trial court entered a judgment fining the accused the sum of $500 and confining him in the county jail for a term of nine months.

The law makes a sharp distinction between a felony and a misdemeanor. In the *Parsons case*, there was one indictment, one verdict, one trial and one sentence imposing punishment applicable to misdemeanors. In the case under consideration, there were five trials, five distinct convictions and five distinct sentences, each imposing separate and distinct terms in the penitentiary. In addition, the single judgment in the *Parsons case*, imposing punishment for the two crimes charged, was not in excess of the punishment which might have been inflicted on Parsons for a conviction on either of the crimes charged in the two counts. The statute (Code,

sec. 4437) provides that if the death penalty is not inflicted on a single charge of burglary, the maximum punishment is eighteen years' confinement in the penitentiary. In the case now under consideration, the sum of the terms of confinement determined by the court on the four indictments for burglary is twenty years. The law applicable to this situation is found in the following authorities.

In *State* v. *Garton*, 102 N. J. L. 318, 133 A. 403, 404, the New Jersey court, dealing with the same situation, said: "The indictment, as we have pointed out, contained two counts. The first count charged the unlawful possession of liquor for beverage purposes, and the second the unlawful sale of liquor for beverage purposes, and the defendant was found guilty on both counts. In such case it is irregular in the court to pronounce a single indiscriminate sentence conjointly for the two offences; and, while the judgment will not be reversed if the punishment thus inflicted is not greater than the punishment provided for either of such misdemeanors, it will be reversed, if the sentence imposed is greater than the punishment provided by law for either of such offences. *Stephens* v. *State*, 53 N. J. Law, 245, 21 A. 1038."

In *O'Connell* v. *The Queen*, 11 Clark & Finnelly's Reps. 155, 261, it is said: "So in indictments for misdemeanors, if there is really more than one offence contained in the indictment, the prosecutor is not usually, as in felony, put to his election, but the defendant may be convicted for several offences. If he should be so convicted, it is most usual to pass sentence separately for each offence; that is, to give judgment separately, not on each count, but, so to speak, on each class of counts, treating them as if they were separate indictments. That course, however, is not always pursued; but one sentence is sometimes passed, where no greater punishment is inflicted than might be under any one of the counts, if it stood alone." See *Parker* v. *People*, 13 Colo. 155, 161, 21 P. 1120, 4 L. R. A. 803.

"The effect of three consecutive terms of imprisonment is seen from the following language by the supreme court of the District of Columbia: 'The relator appears to be impris-

oned for three several terms of one hundred and eighty days each, without any specification as to the time of the beginning or ending of the last two terms of imprisonment. The sentences pronounced by the court do not provide that the period of imprisonment under these convictions are to commence at any future period, or after the expiration of the period mentioned in the former judgment. This omission is fatal to any imprisonment which exceeds that of a single sentence.' " Church on Habeas Corpus, p. 459.

The majority opinion states: "Clearly, where several sentences are lumped into one single term, there is no attempt to specify any sequence, and it would be unreasonable to infer that a court had thereby even considered doing so."

To construe this judgment as "clearly" lumping "several sentences" "into one single term" does violence to the language of the judgment itself. The entry states that the court pronounced five separate and distinct terms of confinement upon the prisoner. It concluded the imposition of the sentences with these words: "* * *, these being *periods* by the court ascertained. It is further ordered that the above terms are to run consecutively, * * *." We might say it would be unreasonable to state that "periods" refer to "one single term." The word, "consecutively," is used five times on the back of the indictments. It is used twice in the judgment itself, referring to the five separate sentences. In order for two or more "periods" of confinement to run "consecutively," one must follow the other. Is it not absurd to refer to a single term or period as running "consecutively?" Consecutive, according to Webster's International Dictionary, means: "Following in a train; succeeding one another in a regular order; having no interval or break; *sequent*."

Even if my understanding of this judgment is unreasonable and the judgment *is* a sentence for twenty-one years, made up of the sum of five convictions, the general rule is: "The punishment for each offense should not be consolidated into one sentence, making the punishment imposed equal to the sum of all the punishments which might be inflicted for each offense of which the defendant was convicted. Thus, if imprisonment is to be awarded, it should be for a specified

time under each count or group of counts charging a distinct offense, the term under the second to commence when the first ends, that under the third to commence on the expiration of the second, and so on; the imprisonment on the several counts or groups of counts to commence on the expiration of each preceding term of imprisonment." 25 Am. & Eng. Encyc. of Law (2d ed.), p. 309.

Section 8 of the Bill of Rights provides: "That in criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty. He shall not be deprived of life or liberty, except *by the law of the land* or the judgment of his peers * * *."

As I understood the law of the land, heretofore it has been that a judgment or sentence under which a person is deprived of his liberty should be clear, definite and certain. It should not be ambiguous and should not be open to any serious misapprehension by those clothed with the duty to execute it. It should inform the accused for what crime he was being punished and the extent of the punishment.

It seems that the majority opinion senses the fundamental principles involved and that the prisoner is entitled to know for what particular offense his liberty is denied him, as it states: "But even if the convict must know what sentence he is serving at any particular time, then the clerk of the penitentiary, who under Code, sec. 4997, is charged with the duty of keeping a register showing the term of confinement and the offense of each convict, could, in the performance of his ministerial duties, inform the convict of his term of confinement and of the offense for which he may be serving his imprisonment."

The statute mentioned provides: "The clerk of the penitentiary shall file and preserve a copy of the judgment furnished by the clerk of the court of conviction of each convict, and keep a register describing him, *the term of his confinement, for what offense,* and when received into the institution."

The vice in the judgment under review is apparent when one attempts to take it and comply with the provisions of this statute. Can any one read the judgment and ascertain which of the five terms of confinement the prisoner has begun to serve or has served, or for what offense he is now serving? It is impossible for the clerk of the penitentiary to perform the duties imposed upon him by this statute, because the judgment itself shows neither the particular offense nor the specified term of confinement under which the prisoner may be held now.

It is not stated in the majority opinion just how the clerk may comply with the provisions of this statute. The opinion overcomes all difficulties by saying that the judgment imposes one sentence upon the accused for a period of twenty-one years. It says that the clerk "could, in the performance of his ministerial duties, inform the convict of his term of confinement and of the offense for which he may be serving his imprisonment." In order to perform these duties, this clerk must be a superman. How is he to ascertain from this judgment entry and inform the accused whether he is serving the one-year sentence pronounced against him for malicious assault upon R. E. Munn; the five-year sentence pronounced against him for entering, in the nighttime with intent to steal, the dwelling house of Nellie Harris at 215 Shafer street; the five-year sentence pronounced against him for entering, in the nighttime with intent to steal, the dwelling house of D. S. Ashton at 1822 West Grace street; the five-year sentence pronounced against him for entering, in the nighttime with intent to steal, the dwelling house of J. E. Haws at 1704 Floyd avenue; or the five-year sentence pronounced against him for entering, in the nighttime with intent to steal, the dwelling house of F. E. Traylor at 309-A North Stafford avenue?

"The judgment of the trial court, especially in criminal cases, should be certain and definite, and ministerial officers should not be left in doubt as to what sentence is to be imposed." *Mills* v. *State*, 29 Ala. App. 106, 191 So. 922, 923.

Of course, no writ of *habeas corpus* should be permitted to be used as a substitute for a writ of error. The question is not

whether the trial court committed error. The question is whether or not the judgment is sufficiently clear and definite for a person of ordinary intelligence to ascertain the particular crime and the particular sentence of confinement that this prisoner is serving at this time.

The writ issued in this case commanded the superintendent of the penitentiary to bring before the court the body of the accused with the cause of his arrest and detention, to which writ the superintendent replied that the accused had been tried and found guilty on separate indictments for five distinct and separate charges, and that he had been sentenced "in the said order of January 25, 1934, to five years' confinement in the penitentiary upon each of the said four indictments for burglary. In the said order of January 25, 1934, the judge of said court provided that each of the said five terms of confinement in the penitentiary, to which the said Hudson was sentenced, should run consecutively, and specifically provided that the five terms made a total of twenty-one years' confinement."

Well, five times four is twenty and one makes twenty-one. This is a mathematical truth. The fact that the "court specifically so stated" does not subtract from or add to the correctness of the mathematical result. It would have been just as true if the trial court had not "specifically provided that the five terms made a total of twenty-one years." The Attorney General, who filed the answer for the superintendent of the penitentiary, at that time evidently did not think that the question involved a single sentence of twenty-one years.

The natural inclination of any good citizen, who desires to see the criminal laws of the Commonwealth enforced for the preservation of peace and good order, is to deny the prayer of the convict in this cause. His record is bad, but the harshness of the case should not lead the court to fallacious reasoning or impel it to put a strained, unnatural interpretation on the law to meet the exigency of a bad case.

HOLT, J., concurs in this dissent.