## DIANA G. CORNS

### V.

## SCHOOL BOARD OF RUSSELL COUNTY, VIRGINIA, ET AL.

Record No. 941252

March 3, 1995

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ.,
and Poff, Senior Justice

*Scott S. Cairns (Cynthia E. Hudson; Deanna L. Ruddock; McGuire, Woods, Battle & Boothe*, on briefs), for appellants.

*Mark R. Graham (David J. Hutton; Boucher, Hutton and Kelly*, on brief), for appellee.

*Amicus Curiae:* (Kathleen S. Mehfoud; Philip F. Abraham; Hazel & Thomas, on brief), in support of appellants.

*Amicus Curiae:* (Dena Rosenkrantz, on brief), in support of appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

On July 26, 1994, a panel of the United States Court of Appeals for the Fourth Circuit entered an order requesting that we invoke our "original jurisdiction . . . to answer questions of state law certified by a court of the United States or the highest appellate court of any other state." Va. Const. art. VI, § 1. By order entered on September 20, 1994, we accepted certification of a question as follows:

Is the requirement that a teacher serve a three year probationary period before attaining "continuing contract" status within the meaning of Va. Code § 22.1-303 met if the teacher in question enters into three or more employment contracts with a school board, or must the teacher in addition to signing three or more such contracts also perform substantial services for the school in each of the years covered by the contracts?

Here as in the federal courts, the defendants[1] (collectively, the School Board) contend that the statute requires performance of substantial services in each of three consecutive school-year contracts. The plaintiff, Diana G. Corns (Corns), argues that the statute requires only that a teacher enter into three or more school-year contracts.[2] The facts as summarized in the order of certification are not in dispute.

---

[1] The defendants include Larry A. Massie, Roger D. Sword, Hugh Barrett, Harold Mitchell, Denny L. Jessee, Olaf Porter, and John Henry Smith (each in his individual and official capacity); and the Russell County Virginia School Board.

[2] Pursuant to Rule 5:30 (a)(3), briefs *amicus curiae* have been filed in support of the School Board by Virginia School Board Association and in support of Corns by Virginia Education Association.

Corns, a librarian[3], signed her first teacher's contract with the School Board for the 1985-1986 school year. Early in the first year, she sustained a work-related leg injury. After an absence of several days, she completed work for that year.

Corns signed a second contract for the school year 1986-1987 and worked until April 1987 when medical problems associated with the leg injury caused her to take sick leave for the rest of the school year. During the summer vacation, she worked several weeks to make up the lost time.

Corns signed a third contract for the school year 1987-1988. Before the beginning of that school year, she experienced a recurrence of symptoms related to her leg injury, and the School Board approved an unpaid leave of absence for that year.

In the summer of 1988, Corns and the School Board executed a fourth contract for the school year 1988-1989. However, as a result of continuing disability related to her injury, the School Board approved her request for another leave of absence for the entire school year.

In the spring of 1989, Corns participated in an on-the-job "hardening program" designed by her workers' compensation administrator to prepare her for return to work. In a letter dated April 10, 1989 enclosing an "employment intent" form for the school year 1989-1990, Corns advised the School Board that, although the filing deadline had passed, she felt that her participation in the hardening program had provided the School Board with timely notice of her employment intent. The School Board did not reply to that letter, and Corns wrote a second letter of intent. In response to that letter, the School Board advised Corns that no positions were available.

On October 5, 1990, Corns signed a fifth contract of employment for the school year 1990-1991, began work as a librarian three days later, and worked the remainder of the school year. That contract contained a clause providing that Corns is "required to serve a three (3) year probationary period before Continuing Contract will be issued."

The parties executed a sixth contract for the school year 1991-1992. Corns completed work for the full year.

---

[3] A librarian is included in the definition of "teacher" for purposes of the statutes in issue.

As summarized in the order of certification, the crucial facts are that "between 1985 and 1992, Corns obtained six annual contracts and worked for two years, followed by the two years of unpaid leave, plus one year where no work was performed, followed again by two years of service."

In March of 1992, the School Board notified Corns that her contract would not be renewed for the school year 1992-1993, and she brought suit against the School Board in the United States Court for the Western District of Virginia. Corns alleged that she had acquired a statutory right to "continuing contract" status, that this right constitutes a property interest, and that the School Board's decision denying her request for a hearing had violated her due process rights under the Fourteenth Amendment of the Constitution of the United States.

Granting Corns' motion for summary judgment, the trial court entered an order reinstating Corns in her position and awarding her back-pay, attorneys' fees, and costs. The School Board appealed.

 In light of the statement of facts contained in the order of certification, Rule 5:42(c)(3), and in order to ensure that the answer to the question before us be "determinative of the proceeding in the certifying court," Rule 5:42(c)(6), we will exercise our discretion under Rule 5:42(d) to restate the question as follows:

> To qualify for "continuing contract" status, does Code § 22.1-303 require a teacher to enter into three consecutive school-year employment contracts and to work for the school board as a teacher in each of the school years covered by those contracts?

The trial court held that "the 'probationary period' described in Virginia Code section 22.1-303 is met when three years of contractual employment have been met" and that Corns "satisfied the three year probationary period of § 22.1-303 by tacking the periods from 1985 to 1987 and 1990 to 1992 together."

Code § 22.1-303 provides that "[a] probationary term of service for three years . . . shall be required before a teacher is issued a continuing contract." The function of a "continuing contract" is explicated in Code § 22.1-304: "Teachers employed after completing the probationary period shall be entitled to continuing contracts during good behavior and competent service . . . ."

The parties agree that the legislative purpose of requiring completion of a probationary term of service is to afford school boards an opportunity to evaluate an applicant's qualifications before granting a teacher continuing contract status. What constitutes completion of a probationary term of service is the essence of the dispute.

## I

We consider, first, Corns' argument that "Virginia Code § 22.1-303 requires contractual employment, not substantial or actual performance . . . ." Asked in oral argument "if a teacher had three years of contract but didn't work any time during that three year period . . . would [she] still be entitled to" continuing contract status, counsel for Corns replied, "I think that is correct."

■ We disagree. To become eligible for continuing contract status, a teacher must serve a period of probation. "As applied to teachers, [probation] means that teacher is on trial with his competence and suitability remaining to be finally determined." BLACK'S LAW DICTIONARY 1202 (6th ed. 1990). A person under a probationary contract to teach who does not work as a teacher affords the school board no opportunity to observe performance and evaluate competence.

■ To create and validate such an opportunity, the statute requires that the three school-year probationary period be a period of "service". In a contractual context, "service" is defined as "[t]he act of serving the labor performed or the duties required". *Id.* at 1368. A teacher who signs a probationary service contract with a school board assumes the duty to work as a teacher. A service contract is executed by performance of the duty bargained for. Continuing contract status is earned only "after completing the probationary period," Code § 22.1-304, *i.e.*, after performing that duty for the probationary period of three school years.

■ We conclude, therefore, that Code § 22.1-303 requires a teacher seeking continuing contract status to perform teaching duties under contract with a school board in each of three school years.[4]

---

[4] In support of her contention that all the statute requires is "contractual employment, not substantial or actual performance," Corns cites the following language the General Assembly added to the foot of the statute in 1989: "For the purpose of calculating the

## II.

We now consider whether those years must be consecutive or, as the trial court ruled, may be intermittent. Corns argues that "[i]f this Court concludes that something more than 'contractual' employment is required . . . she served the required three year probationary period by working the majority of four years between the 1985-86 and 1991-92 school years." Her argument is in accord with the trial court's ruling that the probationary period can be satisfied "by tacking the periods . . . together." We do not agree.

Code § 22.1-303 requires "[a] probationary term of service for three years". Considered in isolation, the language "service for three years" can be interpreted as service in each of three intermittent school years. As we have recently said, however, in the construction of a statute, we must "give meaning to all words used by the General Assembly. We cannot read the statute to render any words meaningless." *Equity Investors v. West*, 245 Va. 87, 91, 425 S.E.2d 803, 806 (1993). The word "term" has meaning. "Term" means a "[p]eriod of determined or prescribed duration." BLACK'S LAW DICTIONARY 1470 (6th ed. 1990). The words "a term" mean one such period.

While administrative regulations are not controlling, "the construction accorded a statute by public officials charged with its administration is entitled to be given weight by the courts." *Bohle v. Henrico County School Board*, 246 Va. 30, 35, 431 S.E.2d 36, 39 (1993). Section 1.2 (E) of Regulations of the Virginia Board of Education, Regulations Governing Contractual Agreements with Professional Personnel, provides:

> If a teacher . . . separates from service during his or her probationary period and does not return to service . . . by the beginning of the year following the year of separation,

three years of service required to attain continuing contract status, at least 160 contractual teaching days during the school year shall be deemed the equivalent of one year in the first year of service by a teacher." Acts 1989, c. 100.

As Corns acknowledges on brief, "many first year teachers apparently are hired after the school year has started so the statute was amended to require only 160 contractual teaching days as opposed to the usual 180 contractual teaching days . . . to start the clock running on the three year probationary period." We find nothing in the amendment that contradicts the statutory requirement of performance of teaching duties once the clock has started running on the probationary term of service.

such person shall be required to begin a new probationary period.

■ In paraphrase, that regulation provides that any lapse in a teacher's service that occurs during the course of a probationary period and extends beyond the beginning of the following school year defeats the completion of that probationary period and requires the beginning and completion of a new period of probation before that teacher becomes entitled to continuing contract status.

■ We hold, therefore, that the plain import of the words "[a] probationary term of service for three years" is a unitary period of three consecutive school years. Accordingly, we answer the certified question, as restated, in the affirmative.

*The certified question is answered in the affirmative.*