PRESENT:  All the Justices

BENNIE G. ALCOY, JR., ADMINISTRATOR
OF THE ESTATE OF DELFINA G. ALCOY, DECEASED

v.  Record No. 051701   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         June 8, 2006
VALLEY NURSING HOMES, INC.

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Lisa B. Kemler, Judge


     In this appeal, we consider whether causes of action for

negligence and sexual assault and battery, based on the failure

of nursing home personnel to ensure the safety of one of their

residents, are subject to the provisions of the Medical

Malpractice Act, Code §§ 8.01-581.1 through -581.20:1 (the Act).

     In 2002, Delfina G. Alcoy was 79 years old when she

suffered a stroke that rendered her physically helpless, unable

to communicate verbally, and incapable of making decisions.

After treatment at a local hospital, Alcoy was admitted to

Woodbine Rehabilitation and Healthcare Center (Woodbine), a

nursing home facility operated by Valley Nursing Homes, Inc.

(Valley) in Alexandria.

     Four days after being admitted to Woodbine, Alcoy was

sexually assaulted.  Among other injuries, she suffered vaginal

bleeding and tearing.  Her assailant was never identified.

Alcoy died about eight months after the assault.

In 2004, Bennie G. Alcoy, Jr., who served as administrator of Alcoy's estate (the administrator), filed an amended motion for judgment in the circuit court against Valley alleging, among other things, negligence, sexual assault, and battery. In his pleadings, the administrator sought both compensatory and punitive damages.

Valley filed a motion in limine, contending that the administrator's claims were governed by the Act. Valley argued that any torts that may have been committed against Alcoy during her confinement at Woodbine constituted "malpractice," as defined in Code § 8.01-581.1. On this basis, Valley asked that the evidence in the case be limited to the issue whether Valley "committed malpractice defined as a breach of the standard of care, which proximately caused damages to Mrs. Alcoy."

The administrator responded that the Act's provisions did not apply because Valley's duty to Alcoy arose from her status as a resident at the Woodbine facility, not from any medical treatment or care she received or should have received at Woodbine. The administrator contended that Valley's failure to protect Alcoy from sexual assault was not a medical omission within the Act but was the result of simple negligence.

The circuit court granted Valley's motion in limine, holding that the administrator's claims were within the scope of the Act. Because the administrator's witnesses were not

2

qualified to give expert medical testimony on the standard of care as required by Code § 8.01-581.20 in the Act, Valley moved for summary judgment. The circuit court granted the motion for summary judgment, and this appeal followed.

The administrator argues that his claims arose from Valley's failure to protect Alcoy from physical harm and were unrelated to her medical care. He contends that the circuit court's interpretations of the Act's terms "health care" and "malpractice" are overbroad and would encompass numerous torts not involving medical care, leading to absurd results. Noting that Code § 8.01-581.20 addresses the "clinical practice" of witnesses providing expert testimony in cases subject to the Act, the administrator asserts that the General Assembly intended that the Act cover only medical acts and omissions, not torts involving building security or hiring practices.

In response, Valley argues that any duty it had to protect Alcoy arose from the patient-health care provider relationship and therefore is subject to the provisions of the Act. Valley asserts that all torts committed by health care providers on their premises are covered by the Act because Code § 8.01-581.1 addresses "professional services" as well as "health care." Valley also contends that the General Assembly has endorsed an expansive definition of medical malpractice, as shown by a recent statutory amendment to Code § 8.01-581.1 that added

3

breach of contract claims for personal injury and wrongful death to the statutory definition of "malpractice." We disagree with Valley's arguments.

The issue before us involves a question of law. Therefore, we review the record de novo on appeal. Wilby v. Gostel, 265 Va. 437, 440, 578 S.E.2d 796, 798 (2003); Transcontinental Ins. Co. v. RBMW, Inc., 262 Va. 502, 514, 551 S.E.2d 313, 319 (2001).

Under basic rules of statutory construction, we consider the language of a statute to determine the General Assembly's intent from the plain and natural meaning of the words used. Britt Constr., Inc. v. Magazzine Clean, LLC, 271 Va. 58, 62, 623 S.E.2d 886, 888 (2006); West Lewinsville Heights Citizens Ass'n v. Board of Supervisors, 270 Va. 259, 265, 618 S.E.2d 311, 314 (2005); Mozley v. Prestwould Bd. of Dirs., 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002). When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003); Industrial Dev. Auth. v. Board of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002). Thus, when the General Assembly has used words of a plain and definite import, courts cannot assign them a construction that would amount to holding that the General Assembly meant something other than that which it actually expressed. Britt Constr., Inc., 271 Va. at 62-63,

4

623 S.E.2d at 888; <u>Alliance to Save the Mattaponi v.</u> <u>Commonwealth</u>, 270 Va. 423, 439, 621 S.E.2d 78, 87 (2005); <u>Williams</u>, 265 Va. at 271, 576 S.E.2d at 470.

The statutory language at issue is clear and unambiguous. Therefore, as in previous decisions involving the scope of the Act, we will apply the plain meaning of the Act's language to the facts presented. See <u>Hagan v. Antonio</u>, 240 Va. 347, 350, 397 S.E.2d 810, 811 (1990); <u>Gonzales v. Fairfax Hosp. Sys.</u>, 239 Va. 307, 310, 389 S.E.2d 458, 459 (1990); <u>Glisson v. Loxley</u>, 235 Va. 62, 67, 366 S.E.2d 68, 71 (1988).

The portions of the Act defining the terms "malpractice" and "health care" are central to the issue before us. The term "malpractice" is defined in Code § 8.01-581.1 as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient."

The term "health care," also defined in Code § 8.01-581.1, "means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement." The Act does not define the term "professional services."

5

Initially, we observe that the allegations in the present case do not involve a tort committed during the course of a medical procedure or treatment administered on a patient's behalf during the course of patient care.  Therefore, the facts here are different from several prior decisions in which we held that the torts alleged were subject to the provisions of the Act.  See e.g., Hagan, 240 Va. at 351, 397 S.E.2d at 812 (alleged battery involving improper touching of breast occurring during physical examination is within definition of "malpractice" under Act); Gonzalez, 239 Va. at 309-10, 389 S.E.2d at 459-60 (laceration of patient's toe in hospital during physical therapy session prescribed for patient's vascular condition is "malpractice" under Act); Glisson, 235 Va. at 69, 366 S.E.2d at 72 (performing arthroscopic surgery without consent is "malpractice" under Act).

We also recognize that the factual context of a tort alleged to have occurred in a nursing home facility presents certain unique circumstances for our consideration.  In agreeing to care for its residents, a nursing facility such as Woodbine engages in many professional services related to patient care that do not occur during the course of a medical procedure or treatment designed to address a particular medical condition.  Thus, the provision of health care and professional services at facilities of this nature may, depending on the particular facts

6

of a case, include additional services beyond those traditionally rendered in a medical office or hospital setting.

With these considerations in mind, the issue we must resolve is whether the administrator's allegations, as a matter of law, describe tortious conduct on Valley's part "based on health care or professional services rendered, or which should have been rendered," within the meaning of the Act. The essence of the administrator's claims is that Alcoy was sexually assaulted because of Valley's failure to ensure her safety by providing adequate and proper personnel, visitor screening, and security systems for the Woodbine facility.

We conclude that these alleged omissions do not involve the provision of health care or professional services as contemplated by the Act. Instead, the alleged omissions involve administrative, personnel, and security decisions related to the operation of the Woodbine facility, rather than to the care of any particular patient. The plain language of the definitions of "malpractice" and "health care" in the Act underscores this distinction.

By their terms, the definitions of "malpractice" and "health care" apply to patients on an individual basis, rather than to the staffing and security of any medical facility in which the patients are located. As defined in Code § 8.01-581.1, "health care" relates to acts or omissions "on behalf of

7

a patient."  Likewise, under the same definitional statute,

"malpractice" involves health care or professional services that

are rendered or should have been rendered "to a patient."  The

factual allegations of the administrator's pleadings address

conduct unrelated to any health care or professional service

that Valley should have rendered to Alcoy individually.

Instead, as stated above, the administrator's allegations

involve failures relating to proper staffing and security

measures for the facility.

The contrary conclusion advanced by Valley is also

untenable because it cannot be harmonized with the provisions of

Code § 8.01-581.20(A), which specify the requirements for expert

testimony on the standard of care in cases subject to the Act.

This section provides:

> A witness shall be qualified to testify as an expert
> on the standard of care if he demonstrates expert
> knowledge of the standards of the defendant's
> specialty and of what conduct conforms or fails to
> conform to those standards and *if he has had active
> clinical practice in either the defendant's specialty
> or a related field of medicine* within one year of the
> date of the alleged act or omission forming the basis
> of the action.

(Emphasis added.)

This statutory language illustrates the General Assembly's

intent that the Act apply only to omissions and actions related

to medical treatment and care of an individual patient, rather

than to any tort committed against a patient on the premises of

8

a medical care facility.  The specific statutory requirement that an expert have had an active clinical practice plainly indicates a legislative intent that expert testimony in cases subject to the Act address medical standards of care, rather than standards concerning building security or employment protocols.  Therefore, we conclude that the circuit court erred in holding that the administrator's claims were subject to the provisions of the Act.

For these reasons, we will reverse the circuit court's judgment and remand the case for further proceedings consistent with the principles expressed in this opinion.

<u>Reversed and remanded</u>.