Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons,
          and Millette, JJ., and Russell, S.J.

NORTHAMPTON COUNTY BOARD
OF ZONING APPEALS, ET AL.                OPINION BY

                              SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 080126                January 16, 2009

EASTERN SHORE DEVELOPMENT CORPORATION

              FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                      Glen A. Tyler, Judge

     This appeal turns upon the interpretation of the language

of a county zoning ordinance.

                         Facts and Proceedings

     The pertinent facts are undisputed.  In 2003, Eastern

Shore Development Corporation (ESDC), as contract purchaser of

a 48.25-acre parcel of land in Northampton County, submitted

an application for the rezoning of a part of the land from the

"A1" (Agricultural 1) zoning district to the "CD-R1"

(Community Development – Single-Family Residential) zoning

district.  The Board of Supervisors of Northampton County

approved the application on August 12, 2004 and also granted a

special use permit for condominium development on the site.

Later, ESDC submitted a site plan for the development of the

rezoned land, showing the proposed construction of eight 8-

unit multi-family residential buildings.[1]

     _____

     [1] The site plan described the proposed development as:  "1
Parcel with 8 Condominiums having 8 Units each."

The county's zoning administrator disapproved the site plan on the ground that newly constructed apartment buildings were prohibited in the "CD-R1" district.  ESDC appealed to the county's board of zoning appeals (BZA), which affirmed the decision of the zoning administrator.  ESDC filed a petition for a writ of certiorari in the circuit court, seeking reversal of the BZA's decision.  By leave of court, the Northampton County Board of Supervisors intervened in the case as a party respondent in support of the position of the BZA. The parties agreed that the case presented a pure question of law, involving the interpretation of the language of the zoning ordinance.  Upon the record, briefs and arguments of counsel, the circuit court reversed the decision of the BZA, holding that the "Zoning Ordinance . . . permits eight eight-unit condominiums of the type shown on Petitioner's Plat . . . when the . . . Board of Supervisors expressly grants a special use permit for such a use."  We awarded the respondents an appeal.[2]

### Analysis

The question presented by this appeal depends entirely upon the interpretation to be given to the phrase "Condominium-type ownership (see VA Code)" as used in the

_____

[2] Respondents BZA and the board of supervisors are hereinafter collectively described as "the County."

2

Northampton County Zoning Ordinance.  The interpretation of legislative language presents a pure question of law, subject to review de novo on appeal.  Horner v. Dept. of Mental Health, 268 Va. 187, 192, 597 S.E.2d 202, 204 (2004).

The applicable sections of the Northampton County Zoning Ordinance (NCZO) divide the territory of the county into five "principal zoning districts," four of which are further subdivided into "secondary zoning districts."  NCZO § 154.081(A),(B).  The secondary zoning classification in which the property in question was contained after its rezoning in 2004 was the "Single-Family Residential District (CD-R1)."  NCZO § 154.081(B)(3)(b).  The ordinance contained "statements of intent" describing the purposes of these classifications.  The intent of the CD-R1 district was stated as:

> 1.  To provide for single-family residential uses at a density sufficient to support public water and sewage systems;
> 2.  To protect the residential character of the district from the encroachment of commercial, industrial, or other uses likely to generate large concentrations of traffic, dust, odor, smoke, light, noise, and other influences which would adversely impact residential uses.

NCZO § 154.082(D)(2)(b).

The ordinance itemizes for each district the uses prohibited, permitted as a matter of right, or permitted only by special use permit.  The uses are set forth in tabular form

3

in columns under the headings of the respective districts to which they apply.  In the "CD-R1" district, "Apartments, new construction" are prohibited, as are "Quadraplex structures" and "Triplex structures." Permitted as a matter of right are "Single family" and "Apartments in existing buildings." Permitted only with a special use permit are "Duplex structures," "Townhouses or row houses," "Zero lot line single-family units" and the category in question here, "Condominium-type ownership (see VA Code)."  NCZO § 154.125(C).

The County argues that "Condominium-type ownership (see VA Code)" means exactly what it says, that title to property in the district may be held in condominium form if a special use permit is granted authorizing that form of ownership.[3]  The reference to the Code of Virginia, the argument continues, is a cross-reference to the Condominium Act, Code §§ 55-79.39 et seq., which defines "condominium" and prescribes the legal

---

[3] Code § 55-79.43(A) prohibits discrimination against condominium ownership by any local land use ordinance.  The Northampton County Zoning Ordinance treats all zoning districts alike in this respect, permitting such ownership in all districts subject to special use permit.  We construe that requirement of a special use permit to refer only to nonconforming conversion condominiums, which are not involved in this case, because those are the only types of condominiums for which Code § 55-79.43(E) makes an exception, expressly authorizing localities to impose special use permit requirements upon them.

4

aspects of that form of ownership, including its creation, management, administration, operation, and sale.  As the County points out, the Condominium Act has no application to, and makes no mention of, the physical structure of buildings.

ESDC contends that "condominium" refers to a multiple unit structure, and points to the definition in NCZO § 154.003(C):  "Condominium. Ownership of single units in a multiple unit structure or complex having common elements." ESDC argues that if that definition is inserted into the table of uses in the ordinance, its project would be permitted.  We do not agree.  The definition, by its very terms, defines a form of "ownership."  Further, the definition is fully consistent with the classification in the zoning ordinance permitting "Condominium-type ownership," (emphasis added), without any reference to the type of structure permitted.

The same section of the ordinance defines "Apartment house" as:  "A building containing three or more dwelling units which serves as the residence of three or more families living independently of each other."  (Emphasis added.)

The clear intent of the zoning ordinance is to limit residential density.  Thus, only single-family homes and apartments within existing buildings were permitted as a matter of right in the CD-R1 district.  Uses of greater density, (e.g., duplex and townhouse structures) are permitted

5

only with a special use permit.  Uses of the greatest density (e.g., triplex, quadraplex and apartment buildings) are unconditionally prohibited.  All of these classifications apply to the physical structure of buildings to be erected within the district.  The classification in question, "Condominium-type ownership," applies instead to the legal form of land tenure to be adopted, not to the physical structure of buildings to be erected.

It is the duty of the Court to read legislative enactments to give meaning to all the words used.  We cannot read them "to render any words meaningless."  Corns v. School Board of Russell County, 249 Va. 343, 349, 454 S.E.2d 728, 732 (1995); Equity Investors, Ltd. v. West, 245 Va. 87, 91, 425 S.E.2d 803, 806 (1993).  This rule of construction applies to local ordinances and acts of the General Assembly alike.  See Monument Associates v. Arlington County Board, 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991).  The reading of the ordinance advocated by ESDC would give effect only to the word "Condominium" in the phrase in question, rendering the remaining five words meaningless.

Although the board of supervisors might have amended the zoning ordinance after following the proper procedure, it was not at liberty to disregard it.  Acts of a local governing body that are in conflict with its own ordinances exceed its

authority and are void and of no effect.  Thus the County's granting of a special use permit was not effective to alter the provisions of the zoning ordinance.  <u>Renkey v. County Bd. of Arlington County</u>, 272 Va. 369, 376, 634 S.E.2d 352, 356 (2006); <u>Board of Sup. of Washington County v. Booher</u>, 232 Va. 478, 481-82, 352 S.E.2d 319, 321 (1987).

Conclusion

We conclude that the zoning ordinance unconditionally prohibited new construction of apartment buildings in the CD-R1 district, that ESDC's proposed construction was of the kind so prohibited, that the BZA correctly so ruled, and that the circuit court erred in reversing the decision of the BZA. Accordingly, we will reverse the judgment appealed from and enter final judgment here affirming the decision of the BZA.

<u>Reversed and final judgment</u>.