COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, McClanahan, Haley, Petty, Beales,
           Powell and Alston
Argued at Richmond, Virginia


JOHN T. GORDON, JR.
                                                                    OPINION BY
v.        Record No. 0364-08-1              JUDGE ELIZABETH A. McCLANAHAN
                                                                 DECEMBER 15, 2009
FORD MOTOR COMPANY


UPON A REHEARING EN BANC

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

         Gregory E. Camden (Charlene A. Morring; Montagna Klein
         Camden, L.L.P., on briefs), for appellant.

         Barry Dorans (Samuel W. Meekins; Wolcott, Rivers, Gates, P.C., on
         brief), for appellee.


         John T. Gordon, Jr. appeals the Workers' Compensation Commission's rejection of his

change-in-condition application for benefits as time barred under the Code § 65.2-708(A)

two-year statute of limitations.  Gordon argues the commission erred in ruling that the tolling

provision in subsection C of this statute "extends only once during the life of a workers'

compensation case," and thus did not operate so as to render his claim timely.  A panel majority

of this Court agreed with Gordon and reversed the commission's decision.  We granted a petition

for rehearing *en banc* and stayed the mandate of the panel decision.  Upon rehearing *en banc*, we

reverse the commission and remand the case for further proceedings.

                                          I. BACKGROUND

         The relevant facts are not in dispute.  Gordon suffered a compensable injury by accident

on January 9, 2000 while working at Ford's production plant in Norfolk.  Based on this injury,

the commission entered a series of awards of compensation to Gordon for various periods of temporary total and temporary partial disability. The last of these awards, entered on January 13, 2003, was an open-ended award for partial disability. Gordon received his last direct payment of compensation under the award on February 23, 2003.

Following his injury, Gordon continued to work for Ford intermittently (between periods of temporary total disability), but only in a light-duty position due to restrictions arising from the injury. From October 23, 2000 through January 3, 2001 and from April 1, 2002 through June 30, 2002, Gordon worked in such a position and earned wages at or above his pre-injury wage. Gordon also worked in a light-duty capacity for Ford from April 20, 2003 through September 11, 2006, again earning wages equal to or higher than his pre-injury average weekly wage.

On September 11, 2006, Gordon was temporarily laid off from his position at Ford because the plant was shut down for production reasons. On September 25, 2006 and again on November 6, 2006 Gordon applied for disability benefits based on lost wages caused by this "change in condition."

Ford defended against Gordon's 2006 application for benefits, in part, by arguing that it was time-barred. Ford asserted that the claim was not filed within two years of Gordon's last payment of compensation (February 23, 2003), that this last payment triggered the running of the two-year statute of limitations under Code § 65.2-708(A), and thus the claim was untimely.

Relying on Code § 65.2-708(C),[1] Gordon argued that his application was not time-barred because all the wages he received for the first twenty-four months of the last period he worked for Ford in a light-duty capacity (April 20, 2003 to September 11, 2006) were deemed to be

---

[1] Code § 65.2-708(C) provides that wages paid to an employee for light-duty work, which are equal to or greater than his pre-injury wage, are treated as compensation for purposes of subsection A of the statute, "for a period not exceeding twenty-four consecutive months."

compensation—with those first twenty-four months ending on April 20, 2005.[2] Gordon

therefore asserted that the two-year statute of limitations in Code § 65.2-708(A) did not begin to

run until April 20, 2005, meaning that his application, filed in 2006, was timely.

Ford responded that the twenty-four-month tolling provision in Code § 65.2-708(C) could

be triggered only once, which occurred when Gordon returned to work, in a light-duty position,

in October 2000.  Ford reasoned that when Gordon was again awarded temporary total disability

benefits in January 2001, the tolling provision was no longer applicable.  Thus, Ford concluded,

"thereafter, all claims for further compensation would have to be filed within two years from the

date for which compensation was last paid per [Code] § 65.2-708(A) and that [Code

§ 65.2-708(C)] could not be used to extend the period during which compensation was said to be

paid."  Ford maintained that since Gordon was last paid workers' compensation benefits on

February 23, 2003, he only had until February 23, 2005 to apply for benefits based on a change

in condition.

The deputy commissioner rejected Ford's argument and awarded Gordon the benefits he

requested.  The deputy commissioner determined that "nothing in the statute indicates that the

provisions of Code § 65.2-708(C) do not begin to run anew after later periods of partial disability

or temporary total disability for which awards are entered."

Ford appealed the deputy commissioner's decision to the full commission.  The

commission held that Gordon's change-in-condition application was time-barred.  The

commission explained its holding as follows:

> We have held that the term "consecutive" in § 65.2-708(C) means
> "following successively without interruption."  Frisk v. Marshall's,
> VWC File No. 183-99-55 (June 6, 2007); Crites v. Slurry Pavers,
> Inc., VWC File No. 202-99-47 (February 15, 2005) (finding the

_____

[2] This last period (April 20, 2003 to September 11, 2006) of the three different periods
that Gordon worked for Ford in a light-duty capacity following his compensable injury was the
only period that exceeded twenty-four consecutive months.

statute tolled only for one consecutive period).  We have additionally held that this section provides "*an* extended limitation period" and the consecutive twenty-four month period begins on the date the claimant is provided light duty work.  Phelps v. Safeway Stores, Inc., 77 OCE 138 (1998) (emphasis added), aff'd, Record No. 1246-98-4 (Ct. App. 1999) (unpub.).  Our holdings are consistent with the language of the statute referring to "a period" and not to multiple periods.  See also Greene v. Gwaltney of Smithfield, Inc., 13 Va. App. 486, 492, 413 S.E.2d 650, 654 (1992).[3]

Therefore, according to the commission, the Code § 65.2-708(C) tolling provision does not "'begin to run anew' after later periods of awarded disability."  In other words, the provision is applicable only once to a compensable injury regardless of the number of awards of compensation for subsequent periods of disability that may arise from the injury.

This appeal followed.

## II. ANALYSIS

Under Code § 65.2-708(A),[4] a party may ask the commission to "review any award" of benefits based upon a change in condition.  However, "[n]o such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title . . . ."  Code § 65.2-708(A).  As such, the twenty-four-month limitation of Code § 65.2-708 "is not a statute of limitations in the ordinary sense.  It does not provide that a

---

[3] As explained *infra*, we do not accord deference to the commission's interpretation of the statute, which is in conflict with the statute's plain language.

[4] Code § 65.2-708(A) provides, in relevant part, as follows:

> Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title . . . .  No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title . . . .

claimant has twenty-four months from the date the change in condition occurred to file."

Armstrong Furniture v. Elder, 4 Va. App. 238, 241, 356 S.E.2d 614, 615 (1987) (applying former

Code § 65.1-99, now Code § 65.2-708).  Rather, subsection A provides that the change in

condition must occur within twenty-four months from the date compensation was last paid.  Id.

Subsection C of Code § 65.2-708, in turn, operates as a tolling provision that extends this

limitation.  This tolling is effected by an expanded definition of compensation to include wages

paid to a claimant for light-duty work that are equal to or greater than his pre-injury wages:

> All wages paid, for a period not exceeding twenty-four consecutive
> months, to an employee (i) who is physically unable to return to
> his pre-injury work due to a compensable injury and (ii) who is
> provided work within his capacity at a wage equal to or greater
> than his pre-injury wage, shall be considered compensation.

Code § 65.2-708(C).

The parties concede that the wages paid to Gordon following his compensable injury met

the statutory test, to the extent that (i) he was unable to return to his pre-injury work due to

restrictions from the injury, and (ii) Ford provided him light-duty work at wages equal to or

greater than his pre-injury wage.  However, the parties disagree as to the meaning of the phrase

"for a period not exceeding twenty-four consecutive months" in Code § 65.2-708(C) as applied

in this case.[5]

Under well-settled rules of statutory construction, "we consider the language of a statute

to determine the General Assembly's intent from the plain and natural meaning of the words

used."  Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006)

(citations omitted).  That is, "words [in a statute] are to be given their ordinary meaning, unless it

---

[5] Because we have determined that the sole issue presented "'involves a pure question of statutory interpretation, [the] issue does not invoke the [commission's] specialized competence but is a question of law to be decided by [this Court].'"  Commonwealth v. Barker, 275 Va. 529, 536, 659 S.E.2d 502, 505 (2008) (quoting Alliance to Save the Mattaponi v.Commonwealth, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005)).

is apparent that the legislative intent is otherwise." Phelps v. Commonwealth, 275 Va. 139, 142, 654 S.E.2d 926, 927 (2008) (citations omitted). And "we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999) (quoting Frazier v. Commonwealth, 27 Va. App. 131, 135, 497 S.E.2d 879, 881 (1998)). Furthermore, it is our "duty . . . 'to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" Oraee v. Breeding, 270 Va. 488, 498, 621 S.E.2d 48, 52 (2005) (quoting Virginia Elec. & Power Co. v. Board of County Supervisors of Prince William County, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)). Thus, we "'will look to the whole body of [a statute] to determine the true intention of each part.'" Id. (quoting McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)).

Under the Virginia Workers' Compensation Act, a claimant may be paid compensation from time to time for various periods of disability under successive awards arising from the same compensable injury, as occurred in this case. Code § 65.2-708(A) contemplates a succession of awards by authorizing the commission to "review *any* award"[6] upon "the ground of a change in condition,"[7] and "on such review . . . make an award ending, diminishing or increasing the

---

[6] See United States v. Gonzales, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (citation and internal quotation marks omitted)); Rubin v. Gochrach, 186 Va. 786, 797, 44 S.E.2d 1, 5-6 (1947) ("The words 'any renewal' [in the subject lease] are comprehensive, and logically include more than one renewal."); Cox v. Cox, 16 Va. App. 146, 148, 428 S.E.2d 515, 516 (1993) ("The plain and unambiguous meaning of the word 'any' is one or more indiscriminately from all those of a kind." (citation and internal quotation marks omitted)).

[7] Pursuant to Code § 65.2-101, a "change in condition" is "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation."

compensation previously awarded, subject to the maximum or minimum provided in this title

. . . ." (Emphasis added.) Furthermore, the two-year statute of limitations under subsection A is

tolled while the claimant receives compensation. Subsection A also provides, however, that (i) a

"change in condition (cause of action) must occur" and (ii) the change-in-condition application

must be filed "within twenty-four months from the date for which the last compensation was

paid." Whitten v. Mead Paperboard Products, 4 Va. App. 182, 186, 355 S.E.2d 349, 350 (1987).

The date for which compensation was last paid under any award is thus the determining

factor as to whether a change-in-condition application is time-barred under Code § 65.2-708(A),

subject to subsection C of the statute. Subsection C sets forth a caveat to the operation of the

subsection A statute of limitations by providing that wages, when paid under the prescribed

circumstances, are "considered compensation." Code § 65.2-708(C). As a result, the payment of

such wages tolls the statute of limitations in the same manner as the payment of compensation.

This caveat, in turn, is subject to the condition that the wages will cease being treated as

compensation at the point when "*a* period" of such payment of wages "exceed[s] twenty-four

consecutive months." Code § 65.2-708(C) (emphasis added).

In construing the word "a" in a similar statutory context, the Virginia Supreme Court

recently stated that the "ordinary meaning" of this indefinite article is "'any' or 'each.'" Phelps,

275 Va. at 142, 654 S.E.2d at 927 (quoting Webster's Third New International Dictionary 1

(1993)). See In the Matter of Carroll, 705 N.E.2d 402, 404 (Ohio App. 1997) (holding that the

statutory term, "a period of up to six months," contemplates multiple periods and that the word

"any" in the subject statute "means one out of many, i.e., an indefinite number").

The legislature was also specific when it defined the nature of the twenty-four-month

period in Code § 65.2-708(C): the twenty-four months must be consecutive. The word

"consecutive" means "successive; succeeding one another in regular order; to follow in

- 7 -

uninterrupted succession." Black's Law Dictionary 304 (6th ed. 1990); see also Am. Heritage Dictionary 313 (2d ed. 1982) ("Following one after another without interruption."); Hudson v. Youell, 179 Va. 442, 465, 19 S.E.2d 705, 715 (1942) (Hudgins, J., dissenting) (quoting Webster's Int'l Dictionary to define "consecutive" as "'[f]ollowing a train; succeeding one another in a regular order; having no interval or break; *sequent*'"). Each month of that twenty-four-month period must "follow in uninterrupted succession.'" Black's Law Dictionary, supra, at 304. In other words, the statute does not permit a combination of multiple periods of shorter duration to end the tolling provisions of Subsection C. And, if multiple periods of shorter duration do not exhaust the twenty-four consecutive month period, it is illogical to think that a single period of shorter duration would do so. Had the General Assembly intended the statute to apply to any period of shorter duration, it simply would have omitted the word "consecutive" and defined the period as "not to exceed twenty-four months."

Accordingly, the Code § 65.2-708(A) statute of limitations runs anew under each successive award of compensation for a particular compensable injury, and is triggered on the last day for which compensation was paid. Subsection C, in providing for wages to be treated as compensation under subsection A, is likewise subject to application under each such award as subsection C supplements subsection A, A and C operating in conjunction with each other. Subsection C is not a stand-alone provision—it instead provides a definition for the tolling mechanism applied to subsection A, where a claimant has received wages (rather than compensation) as provided in subsection C. The Code § 65.2-708 change-in-condition/statute of limitations scheme thereby functions, in its entirety, on an award-by-award basis—not on what amounts to a hybrid award-by-award/injury-by-injury basis under the commission's construction of the statute.

Here, during three different periods following Gordon's compensible injury, Ford paid Gordon wages equal to or more than his pre-injury wage for performing light-duty work while under awards for temporary partial disability. The first two such periods extended from October 23, 2000 through January 3, 2001 and from April 1, 2002 through June 30, 2002. The third such period extended without interruption from April 20, 2003 through September 11, 2006, following the commission's January 13, 2003 open-ended award of compensation to Gordon for partial disability. Therefore, during the first twenty-four months of this third period of Gordon's light-duty employment for Ford, Gordon's wages were to be "considered compensation" for purposes of tolling the Code § 65.2-708 statute of limitations. Code § 65.2-708(C). The statute of limitations was thus tolled through April 20, 2005, meaning Gordon's change-in-condition application, filed in 2006, was not time-barred under the statute.[8]

## III. CONCLUSION

For these reasons, we reverse the commission's decision and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[8] Because neither of the first two periods during which Gordon worked in his light-duty position for Ford following his compensable injury extended for twenty-four consecutive months, as it did in the third period, we need not decide whether the subsection C tolling provision runs anew once a claimant has received the benefit of the provision for such a period of twenty-four consecutive months.

Haley, J., dissenting.

I respectfully dissent.  I would hold Code § 65.2-708(C) provides only one extension of the statute of limitations contained in Code § 65.2-708(A) per compensable injury.  Since the time provided by the statute of limitations, even with the extension contained in subsection C, expired before Gordon filed his claim, I would hold Gordon's claim time-barred.

In relevant part, Code § 65.2-708 states:

> A.  Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title, and shall immediately send to the parties a copy of the award. . . . No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title . . . .

> \*       \*       \*       \*       \*       \*       \*

> C.  All wages paid, for a period not exceeding twenty-four consecutive months, to an employee (i) who is physically unable to return to his pre-injury work due to a compensable injury and (ii) who is provided work within his capacity at a wage equal to or greater than his pre-injury wage, shall be considered compensation.

When examining the meaning of a statute, we look first to its plain language.  Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006).  To this end, "we examine the statute in its entirety, rather than by isolating particular words or phrases."  Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999).  The Court assumes the General Assembly carefully chose the terms used.  Simon v. Forer, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003).  We may not "add language to the statute the General Assembly has not seen fit to include," Jackson v. Fid. & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (citation omitted), or give statutory terms of definite meaning "a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed," Lee County

- 10 -

v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002). When the statutory language is clear, "we are bound by the plain meaning of that language." Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001). The statutory interpretation at issue here concerns a pure question of law and so we review the commission's decision *de novo*. Town of Waverly Law Enforcement v. Owens, 51 Va. App. 277, 280, 657 S.E.2d 161, 163 (2008).

Code § 65.2-708(C) states that when an employee lacks the physical ability to perform his work because of a compensable injury, his employer provides him with other work suitable to his new capacity, and the wages from that work equal or exceed the pre-injury pay, those wages toll the statute of limitations for filing a change-in-condition application under Code § 65.2-708(A) up to twenty-four months. See Scott v. Scott, 16 Va. App. 815, 818, 433 S.E.2d 259, 261 (1993). An employee meeting the statutory conditions receives "an additional twenty-four months before the statute of limitations of Code § [65.2-708(A)] begins to run." Greene v. Gwaltney of Smithfield, Inc., 13 Va. App. 486, 492, 413 S.E.2d 650, 654 (1992). Code § 65.2-708(C) "operates solely to extend the limitation period of Code § [65.2-708(A)] . . . . Code § [65.2-708(C)] has no applicability, except with reference to Code § [65.2-708(A)]." Cohen v. Fairfax Hosp. Ass'n, 12 Va. App. 702, 707, 407 S.E.2d 329, 332 (1991). The General Assembly enacted Code § 65.2-708(C) "to prevent employers from lulling partially disabled workers into a false sense of security . . . by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits." Nguyen v. Fairfax County Bd. of Supervisors, 26 Va. App. 100, 103, 493 S.E.2d 391, 392 (1997) (citation omitted).

I would hold that the language of Code § 65.2-708(C) provides only one extension of the statute of limitations contained in Code § 65.2-708(A) per compensable injury. The Code

contains this limitation by authorizing tolling of "*a period not exceeding* twenty-four *consecutive* months." Code § 65.2-708(C) (emphasis added).

Although the majority holds the General Assembly intended to permit multiple periods of extension, our case law shows the language of "a period" contemplates only one period. Our Supreme Court addressed this issue in <u>Corns v. School Board of Russell County</u>, 249 Va. 343, 454 S.E.2d 728 (1995). There the Court considered the meaning of statutory language requiring "[a] probationary term of service for three years" for teachers. <u>Id.</u> at 349, 454 S.E.2d at 732. The Court held that while the phrase "service for three years" could "be interpreted as service in each of three intermittent school years . . . [t]he words 'a term' mean one such period." <u>Id.</u>; <u>see also</u> <u>Van Dresser v. Firlings</u>, 24 N.E.2d 969, 970 (Mass. 1940) ("The word 'period' as applied to time carries with it the idea of the separation of a designated interval of time from the flow of time in general. The words 'a period' do not readily expand to include an irregular succession of times or periods of varying length . . . ."). As applied here, the language in Code § 65.2-708(C) of "a period" likewise means one period. It was not necessary for the General Assembly to use the word "one" to indicate one period.

If the General Assembly had intended to permit multiple periods of tolling under Code § 65.2-708(C), it could have easily done this by writing the statute to authorize "*periods* not exceeding twenty-four consecutive months." It seems more rational to use the plural to mean the plural than to use the singular to mean the plural, as the majority holds. Long ago Justice Hudgins suggested as much when he remarked that "it would be unreasonable to state that 'periods' refer to 'one single term.'" <u>Hudson v. Youell</u>, 179 Va. 442, 465, 19 S.E.2d 705, 716 (1942) (Hudgins, J., dissenting); <u>cf.</u> <u>Rasmussen v. Commonwealth</u>, 31 Va. App. 233, 237-39, 522 S.E.2d 401, 403-04 (1999) (holding that where a scientific test took multiple samples to produce a single result and the statute gave the defendant the right to observe the "breath test,"

"sample," and "blood alcohol reading," phrased in the singular, the defendant only had the right to see the final printed result).

When combined with the language of a single period, the statutory grant of an extension "*not exceeding* twenty-four consecutive months" also evidences an intent to limit tolling to a defined period. Code § 65.2-708(C) (emphasis added). The term "not exceeding" is defined: "Usually a term of limitation only, denoting uncertainty of amount." Black's Law Dictionary 1061 (6th ed. 1990). Our Supreme Court has referred similarly to the term, calling it "clear words of limitation." Southern Ry. Co. v. Commonwealth, 206 Va. 831, 836, 147 S.E.2d 72, 75 (1966). Another court stated that "not exceeding" means an amount "shall not be more, but may be less." Stuyvesant Ins. Co. v. Jacksonville Oil Mill, 10 F.2d 54, 56 (6th Cir. 1926). The court remarked that any other interpretation "does violence to the plain and unambiguous language." Id. Still another court held that where a contract required a company to operate a business "for a period 'not to exceed sixty days,'" any amount up to sixty days satisfied the contract. Union Liquors, Inc. v. Finkel & Lasarow, Inc., 113 P.2d 19, 21 (Cal. Ct. App. 1941). Thus, the words "not exceeding" in Code § 65.2-708(C) reveal the General Assembly's intention to limit the tolling of the statute of limitations to up to, but no more than twenty-four consecutive months. See also Rohanna v. Commonwealth, 168 Va. 696, 701, 190 S.E. 171, 173 (1937) (holding that where a statute authorized a court to require a criminal defendant to give a bond for "a term not exceeding one year," the court lacked power to require bonds beyond the term of the initial year); Cox v. Hagan, 125 Va. 656, 680, 100 S.E. 666, 674 (1919) (using "not exceeding" to refer to up to a maximum amount). Twenty-four consecutive months represents the maximum extension.

The majority's conclusion that the term "consecutive" means the period of extension described in Code § 65.2-708(C) runs until reaching twenty-four months ignores the statutory

- 13 -

language of "not exceeding."  "The words 'not exceeding,' in themselves, are words not of grant or apportionment, but of limitation only, and standing alone are ordinarily so construed."  City of Kingsville v. Meredith, 103 F.2d 279, 281-82 (5th Cir. 1939); see also Boston & M.R.R. v. United States, 265 F. 578, 579 (1st Cir. 1920).  "The words denote uncertainty of amount.  Such language imposes no duty to adopt the maximum amount rather than some lesser amount authorized."  Saxhaug v. County of Jackson, 10 N.W.2d 722, 724 (Minn. 1943) (citation omitted).  The plain meaning of a term "not exceeding twenty-four consecutive months" is a period up to, but no more than twenty-four consecutive months.[9]  See Chiles v. Phelps, 714 So. 2d 453, 459 (Fla. 1998) (stating that a provision of the Florida Constitution limiting special sessions of the legislature to a period that "shall not exceed twenty consecutive days" set "only outer limits on the length of special sessions").  Any length of time from a day to two years is a period not exceeding twenty-four consecutive months.  As the dictionary states, the time is unspecified.  Yet for the majority, the statute specifies a twenty-four-month period.  This changes the language of "a period not exceeding twenty-four consecutive months" to "a period equal to twenty-four consecutive months."  I cannot reconcile "not exceeding" with "equal to."

It may be objected that the statute could allow multiple single periods not exceeding twenty-four consecutive months based on new awards consistent with the above interpretation of language.  Such an objection fails because of the absurd results it produces plainly contrary to the intent of the General Assembly.

Indeed, an enormous problem in this case is that both the majority and commission interpretations cause potentially absurd results under the statute.  Our Supreme Court has

---

[9] Consecutive is defined:  "Successive; succeeding one another in regular order; to follow in uninterrupted succession."  Black's Law Dictionary, supra, at 304; see also Hudson, 179 Va. at 465, 19 S.E.2d at 715 (Hudgins, J., dissenting) (quoting Webster's International Dictionary to define "consecutive" as "'[f]ollowing in a train; succeeding one another in a regular order; having no interval or break; *sequent*'").

- 14 -

repeatedly cautioned that "a statute should never be construed in a way that leads to absurd results." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007). An absurd result is one "in which the law would be internally inconsistent or otherwise incapable of operation." Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004). Our Supreme Court construed language to avoid absurd results in Marsh v. City of Richmond, 234 Va. 4, 360 S.E.2d 163 (1987). There a city charter permitted city council members to be reimbursed for their extraordinary expenses. Id. at 5, 360 S.E.2d at 164. The Court held the General Assembly intended that only unusual, unforeseen expenses had eligibility for reimbursement. Id. at 12, 360 S.E.2d at 168. The Court acknowledged some expenses could be extraordinary simply because of the great expense incurred, but warned this situation would be rare. Id. To allow ordinary large expenses eligibility for reimbursement "might produce the absurd result that an item of expense, admittedly not of a kind or type intended . . . to be reimbursable and, in this sense, not extraordinary, may yet be found extraordinary and hence reimbursable simply because the claimant expends an exorbitant amount on the item." Id. at 13, 360 S.E.2d at 168. "[T]he General Assembly did not intend such an absurd result." Id. Similarly, in Valley Acceptance Corp. v. Glasby, 230 Va. 422, 431, 337 S.E.2d 291, 296 (1985), the Court found an absurd result would occur where a party could "escape the Act by doing exactly what it forbids." It is apparent from these cases that where a construction would plainly go contrary to legislative intent in a substantial number of instances, such an interpretation represents an absurd result a court should avoid.

The majority's holding causes absurd results for several reasons. First, by holding tolling re-starts upon each award, the majority permits those having benefits reinstated after a termination for non-compliance with the Workers' Compensation Act to benefit from that

disobedience.[10] The notion that a court could construe a statute in a way so that violating the statute could work in a person's self-interest was expressly repudiated in Valley Acceptance Corp. Second, the majority's holding inverts the purpose of the statute of limitations by least aiding those the statute seeks to protect and most assisting those not requiring protection. As previously noted, Code § 65.2-708(C) exists "to prevent employers from lulling partially disabled workers into a false sense of security . . . by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits." Nguyen, 26 Va. App. at 103, 493 S.E.2d at 392 (citation omitted). Employees diligent in asserting their rights obviously lack a risk of having a "false sense of

---

[10] An example of a way that an employee could gain a new tolling period under the majority's holding by violating the Act is found in Code § 65.2-607. That section states:

> A. After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Commission, shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Commission. . . .

> B. If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Commission the circumstances justify the refusal or obstruction.

Under the majority's holding, if an employee unreasonably refused a medical exam and so had benefits suspended, but then agreed to the exam, a new award ordering reinstatement of benefits would renew the tolling period, even though the issue only arose at all because of the employee's disobedience to the Act. Such a result is plainly erroneous, for a person may not extend the tolling provisions otherwise applicable in the Act "by doing exactly what it forbids." Valley Acceptance Corp., 230 Va. at 431, 337 S.E.2d at 296.
While it is true that reinstatement of compensation after an employee's breach of the Act resulted in termination would toll the statute of limitations under subsection A, such tolling would occur with or without the employee's disobedience. On the other hand, the employee would not receive a new award—and hence an additional twenty-four months of tolling under subsection C—without the disobedience.

- 16 -

security." Nonetheless, the majority's holding benefits them the most by giving a new tolling period for each award.[11] Conversely, employees at risk of being lulled into complacence receive the fewest tolling periods. This type of inverted result goes against the holding of <u>Marsh</u> that statutes are to be construed consistently with their purpose. Third, the majority's holding permits employees to obtain twenty-four-month tolling periods indefinitely into the future since any award for any small period of time, even for something like a doctor's appointment, gives an employee a new period of tolling.[12]

The commission's interpretation may cause absurd results since even such a brief break for a doctor's appointment instantly terminates the single twenty-four-month period.[13] This

---

[11] The commission's opinion also recognized that extending the tolling period upon later awards does not accord with the purpose of the Act. The commission wrote:

> Moreover, the purpose of Virginia Code 65.2-708(C) is to deter an employer from gaining an advantage by bringing an employee back to light duty at pre-injury wages and then terminating him after the statute of limitations has expired. We do not believe this purpose is served by interpreting the statute to provide that the tolling provisions begin to run anew after later periods of awarded disability. There was no finding that the claimant was lulled into a false sense of security causing his filing to be delayed. Additionally, the claimant has not been terminated by the employer.

(Citations and internal quotation marks omitted). I agree with the commission in this regard.

[12] It is true that such brief absences could have the same indefinite tolling effect under Code § 65.2-708(A). Yet subsection A is not limited to a period not exceeding twenty-four consecutive months, whereas subsection C is. For this reason and reasons expressed later in this dissent, indefinite tolling under subsection C is problematic.

[13] In <u>Crites v. Slurry Pavers, Inc.</u>, VWC File No. 202-99-47 (Feb. 15, 2005), cited with favor in the commission's decision here, the claimant returned to work from a compensable injury in June 2001. He was laid off in November 2001, but returned to work in 2002. The commission stated "the statute of limitations was tolled for the consecutive period that he continued to earn his pre-injury wage while performing restricted duty--that is, until he was laid off in November of 2001." This constituted the "consecutive period of receiving 'compensation' from the employer as contemplated by Code § 65.2-708(C)." In <u>Phelps v. Safeway Stores, Inc.</u>, 77 OWC 138 (1998), also cited with favor in the commission's <u>Gordon</u> opinion, the commission

could happen to many employees soon after returning from an injury, making the tolling period meaningless because of its brevity.

Thus, in the interpretations of both the majority and the commission, the General Assembly's plain intent that employees receive a limited period of tolling fails in a manifest way, rendering the statute "incapable of operation." Cook, 268 Va. at 116, 597 S.E.2d at 87.

To avoid these pitfalls and effectuate the intent of the General Assembly, which represents "the paramount object of statutory construction," Vollin v. Arlington County Electoral Bd., 216 Va. 674, 678-79, 222 S.E.2d 793, 797 (1976), I would hold the statute provides a single twenty-four-month period of tolling per compensable injury and that earnings at or above pre-injury levels from any light-duty work falling within these twenty-four months are considered compensation, regardless of whether any new awards or breaks from work occur within this period. The tolling begins when an employee returns to light-duty work at or above his pre-injury wages.[14] For the next twenty-four months, those earnings are considered compensation. If the employee temporarily leaves work and then returns, the wages remain compensation. However, the single twenty-four month period permanently ends for that injury twenty-four-months from the start of light-duty work at or above pre-injury wages.

This interpretation also accords with the principles of language expressed above. The statute's language of "a period" finds fulfillment in a single period. The period does not exceed twenty-four months. Furthermore, the period is up to, but not exceeding twenty-four months

_____

wrote that Code § 65.2-708(C) "applies to the twenty-four consecutive months after a claimant returns to light-duty work without a wage loss."

[14] I note I do not read the majority's opinion, as Ford does on brief, to hold the relevant date for re-starting tolling to be the date of the award. Rather, the date the majority holds re-starts tolling is the date an employee returns to light-duty work at or above pre-injury pay after a period for which compensation has been or will be awarded. See Code § 65.2-708(A). As the majority states, the statute of limitations "is triggered on the last day for which compensation was paid."

- 18 -

since an employee could leave work and not return before the period's expiration. Such an employee would receive less than the full period in tolling. Finally, the twenty-four months run consecutively.

Support for this interpretation as the fulfillment of the General Assembly's intent becomes clearer when considered in light of workers' compensation jurisprudence from other jurisdictions.

Although Code § 65.2-708(C) became effective in 1989, the principle it contains has a long history. During the Great Depression, in Morrison v. Industrial Accident Commission, 29 Cal. App. 2d 528, 537, 85 P.2d 186 (1938), it was written that "payment of wages to [an injured employee] . . . is likely to lull him into false hopes and cause him to delay presenting his claim until the statute of limitations has barred it."

To remedy these perceived ills, payments of wages to injured employees were held to toll the statute of limitations. Precisely when these wages operate a tolling, however, differs among jurisdictions. One leading treatise has summarized a general rule in this way: "A theoretically correct rule . . . would be this: Payment of wages tolls the statute if it was intended to be made on account of compensation liability, *or* if the employee reasonably believed it was so intended." 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 126.07[12] (2004).

In enacting Code § 65.2-708(C), the General Assembly recognized the policy concerns necessitating the statute, but rejected case-specific factual inquiries in favor of a bright-line rule. Wages at or above pre-injury levels paid to an injured employee performing light-duty work are now considered compensation for up to twenty-four consecutive months. The statute balances the interests of employees and employers by (1) providing an automatic tolling for up to twenty-four consecutive months, while (2) limiting the tolling period to twenty-four consecutive months.

The majority's holding eviscerates the balance struck by Code § 65.2-708(C). Rather than providing a rule for the benefit of employees and employers, the majority gives employees an essentially indefinite statute of limitations to file a change-in-condition application. While I recognize we liberally construe the Workers' Compensation Act, Masonite Holdings, Inc. v. Cubbage, 53 Va. App. 13, 19, 668 S.E.2d 809, 812 (2008), that does not mean we ignore other considerations.[15] As our Supreme Court has stated, the Act represents "a carefully balanced societal exchange between the interests of employers, employees, insurers, and the public." Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989). It is also notable that the Act provides that of the three commission members, only one shall represent employees and only one shall represent employers. Code § 65.2-200(D).

In summary, the language of Code § 65.2-708(C) provides one period of extension per compensable injury from the statute of limitations in Code § 65.2-708(A). The language authorizing "a period" rather than "periods" denotes a single period. Taken together, the words "not exceeding" and "consecutive" show the General Assembly desired an extension of the statute of limitations up to but no greater than twenty-four consecutive months. The twenty-four-month period starts when an employee begins light-duty work at or above pre-injury pay and the earnings from such work in the ensuing twenty-four months are considered compensation, regardless of whether breaks in work or other awards occur. After twenty-four months, the employee may not receive additional tolling for the injury that caused the tolling to occur.

---

[15] The workers' compensation regime is wholly a creature of statute. E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d 685, 687 (2002). This Court does not re-weigh the General Assembly's consideration of competing interests, for "[t]he calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979).

Here Gordon returned to light-duty work earning at or above his pre-injury wages in October 2000. This started the twenty-four-month tolling provision of Code § 65.2-708(C). For the next twenty-four months, the Code considered any wages Gordon received in this work at or above his pre-injury pay to be compensation. The twenty-four-month period expired in October 2002 and could not be renewed thereafter based on the January 2000 injury. However, since Gordon last received payment pursuant to an award in February 2003, he had until February 2005 to file an application based on a change in condition. Yet Gordon did not file his application until September 2006.[16] This fell outside the time provided by the statute of limitations, and the commission correctly held the application time-barred.

For the foregoing reasons, I would affirm the judgment of the commission.

---

[16] As noted in the majority's opinion, Gordon also earned greater than his pre-injury wage from April to June 2002. Even using these dates, the statute of limitations still bars Gordon's claim since he would have needed to file by April 2006.